CROCKETT t/a Crockett Associates *v.* CROTHERS
ET AL.

[No. 173, September Term, 1971.]

*Decided January 17, 1972.*

The cause was argued before HAMMOND, C. J., and McWilliams, Finan, Singly, Smith and Digges, JJ.

*William B. Somerville,* with whom were *Douglas G. Worrall* and *Smith, Somerville & Case* on the brief, for appellant.

*William B. Calvert,* with whom were *Donaldson C. Cole, Jr., Rollins & Calvert* and *O. Robert Lidums* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

This tripartite appellate confrontation is between householders (plaintiffs and appellees) into whose home came water under pressure after a water main was broken by a contractor, Cullen (a defendant found liable, but not an appellant), while constructing a sewerage system for the Town of North East according to plans and specifications which did not reveal that water main, prepared by an engineer, Crockett (a defendant also found liable, and the appellant), under a contract with the Cecil County Metropolitan Commission.

The jury answered yes to both parts of an issue that read:

"(a) Was the engineer, Mr. Crockett, negligent in not showing the ruptured water line on the plans he drew up?
"(b) If 'yes' was his negligence a proximate cause of the damages?"

Crockett argues feelingly that he should have prevailed below as a matter of law, on his motion for a directed verdict or on his motion for judgment n.o.v. because there was no evidence (a) of the standard of care an engineer such as he should have followed; (b) that he failed to exercise the requisite care, or (c) that his failure, assuming it to have been shown, was a proximate cause of the harm that occurred. He makes the subsidiary contentions that the trial court failed to properly instruct the jury as to the standard of care to be exercised and whether that standard was met; that the issue submitted to the jury was prejudicially simple and that the trial court wrongly entered judgment for Cullen on the cross-claim of Crockett for indemnity.

Even as all of us fail to see ourselves as others see us, the image appellants often have of their cause and their contentions is not the image the reviewing court sees. That is true here. We find no merit in any of Crockett's claims and will affirm the judgment he appealed from.

In an action against a professional man for malpractice, the plaintiff bears the burden of overcoming the presumption that due skill and care were used. *Bettigole v. Diener,* 210 Md. 537, 541; *Lane v. Calvert,* 215 Md. 457, 462. Although there may be instances in which the negligence is so gross or that which was done so obviously improper or unskillful as to obviate the need for probative testimony as to the applicable standard of care, *Fink v. Steele,* 166 Md. 354, 361 (and here we proceed on the assumption that this is not such a case), generally there must be produced expert testimony from which the trier of fact can determine the standard of skill and care ordinarily exercised by a professional man

of the kind involved in the geographical area involved and that the defendant failed to gratify these standards. *Johns Hopkins Hospital v. Genda*, 255 Md. 616, 620; *Telak v. Maszczenski*, 248 Md. 476, 491; *Tempchin v. Sampson*, 262 Md. 156.

There was the requisite testimony in the present case, largely from Crockett himself. Other testimony had shown that in digging a sewer line the contractor follows the engineer's plans both as to direction and as to grade, and that the water main that the contractor broke was not on the plans prepared by Crockett, although his aim and general practice were to find and show on the plans all obstructions in the path of the line. Crockett testified that normal practice in preparing plans was to utilize aerial photographs supplemented by a field survey (but no physical subsurface investigation) so as to determine all that could be seen, including first floor and basement elevations of houses. He said:

> "We talk to all the utilities that conceivably have utilities in the area, such as the Conowingo Power Company, AT & T, the Telephone Company, the town if they have water and/or sewerage plants. *We exhaust all possibilities.* We talk to the State Roads Commission, because they own the streets, some of the streets, that go through the town. Sometimes their plans show underground obstructions or surface obstructions that may not show up in an aerial photograph, or normal field survey. (Emphasis added.)
>
> "We do a fairly thorough job of researching, the purpose for which is as a guide to the contractor. We feel that the more we can show him the lower he will bid the job.
>
> "Q. Are the things you just described the things that are ordinarily done by engineers in preparing plans? A. Yes, sir. This is very normal practice."

It was shown that Crockett knew that several years earlier Whitman Requardt & Associates, well known and long established engineers, had prepared plans for water and sewer lines for the town of North East and that these plans showed the water main that was broken. Crockett said that he, apparently in preparing earlier plans, had seen drawings showing wells near the area involved and that the pipe that was broken apparently had carried water from the wells. Crockett did not inquire of the town of North East as to whether it had plans showing the sub-surface pipes in the area. The town had parts of the Whitman Requardt plans and Mayor Johnson, who doubled as at least its de facto water engineer, knew that a man named Jones had the rest of these plans because after the breaking of the pipe he went to Jones "because I was asking about elevations," and saw the part of the Whitman Requardt plans that showed the mischief-causing water main.

We think the jury legitimately and fairly could have found that Crockett did not "exhaust all [reasonable] possibilities" of discovering that the water main was where it was, as the applicable normal and customary standard of care required him to do, and that if he had inquired of Whitman Requardt or the town of North East the reasonable probability was that the water pipe would have been discovered by him and put on his plans. Therefore, his failure to go further in his investigations and plan preparations than he did could reasonably have been found to be negligence that was a proximate cause of the harms sued on.

The appellant's contention of error in the instructions is premised on the fact that the case turns on whether he was guilty of "professional negligence" and in such instance it is incumbent upon the trial judge "to give more than a general charge [and] address himself to the issue in the case." Judge Mackey charged the jury that the Crothers must prove each element of their cause of action, one facet of which was Crockett's failure to use due care, and said that this:

> "is the failure to exercise that degree of care that an ordinary and reasonably prudent and careful person would exercise under similar circumstances. And of course, more specifically in this case it would be the failure to exercise that degree of care that a careful and prudent engineer would exercise under similar circumstances."

In response to counsel's exceptions the trial court expanded its instructions, saying:

> "Mr. Crockett has a duty to perform, which duty is that which any careful and prudent engineer in the Cecil County area or the tri-state area here would perform under like circumstances."

The issue before the jury was simple and uncomplicated and the instructions fairly and adequately covered it.

Crockett argues further that "the issue presented to the jury did not fairly state the question of the violation of the standard of care." In the light of the testimony and the charge, we think the decisive question to be answered by the jury was precisely that which was presented—"was Crockett negligent in not showing the ruptured water line on the plans he drew up?"

By stipulation the cross-claim was heard by the court. Judge Mackey found that Cullen was negligent and that his negligence was a proximate cause of the damage suffered by the Crothers. He also found that contrary to Crockett's contention his negligence was not passive or secondary vis-a-vis the active negligence of Cullen and that therefore Crockett, being in pari-delicto with Cullen, was not entitled to indemnity from Cullen. We think his findings were sound.

The general rule is that contracts will not be construed to indemnify a person against his own negligence unless an intention so to do is expressed in those very words or in other unequivocal terms. *Blockston v. United States,* 278 F. Supp. 576, 591 (D. Md.) ; *Farrell Lines, Inc. v. Devlin,* 211 Md. 404, 421-422; 24 Md. L. Rev. 66.

The contract between Crockett and Cullen in Article 32 "Indemnification" provides in the first paragraph that Cullen will indemnify the owner and the engineer from all claims, damages and losses arising out of or resulting from the performance of the work. Paragraph 3 provides:

"The obligations of the CONTRACTOR under this Article 32 shall not extend to the liability of the ENGINEER, his agents or employees arising out of (a) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications or (b) the giving of or the failure to give directions or instructions by the ENGINEER, his agents or employees provided such giving or failure to give is the primary cause of injury or damage."

Judge Mackey correctly construed the contract. Cullen did not agree in so many words or otherwise unequivocally—indeed did not agree at all—to indemnify Crockett against his own negligence.

*Judgments affirmed, with costs.*