457 So.2d 1290 (1984)
RIVER PARISH SERVICES, INC.
v.
GOODHOPE REFINERIES, Now GHR Energy Corp. and Bank of LaPlace.
No. 83-CA-423.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1984.
Rehearing Denied November 16, 1984.
Writ Denied January 14, 1985.
*1291 William D. O'Reagan, III, LaPlace, for plaintiff-appellee.
Accardo, Carville, Edrington, LeBlanc & Golden, Richard L. Edrington, George Ann Hayne Graugnard, LaPlace, for defendant-appellant.
Before GAUDIN, GRISBAUM and MARCEL, JJ.
GRISBAUM, Judge.
The defendant, Bank of LaPlace, suspensively appeals from a judgment in favor of River Parish Services, Inc., hereafter RPS, Inc., requiring the bank pay $17,200 owed on open account for services rendered by RPS, Inc. to Good Hope Refineries Energy Corporation, hereafter GHR, together with legal interest from date of judicial demand and with each party to bear its own attorney's fees. Additionally, RPS, Inc. appeals from the trial court's dismissal of the claim for payment which it brought to bear against GHR. In answering the appeal, RPS, Inc. requested in addition to the sum of $17,200, damages in the amount of $20,000, along with interest thereon from date of judicial demand and attorney's fees. We affirm.
From approximately June 5, 1981 to June 14, 1981, RPS, Inc. provided certain services to GHR for which GHR was invoiced in the amount of $17,200. The parties to this action stipulated a debt for this amount was owed on open account to RPS, Inc. by GHR. On June 9, 1981, a checking account was opened at the Bank of LaPlace in the name of River Parish Services (without the designation, "Inc.") with the deposit of a check. Earl Harbison, president and purchasing agent for GHR, in the presence of a bank authority, signed his name on the account signature card, which was entitled "River Parish Services." In the two-month interim, the Bank of LaPlace permitted someone, and allegedly Earl Harbison, unsupervised access to the signature card during which time the signature of Fred L. Ratliff, Jr., president and manager of RPS, Inc., was placed on the signature card. On August 8, 1981, GHR wrote a check to the order of "River Parish Services," including the proper address of RPS, Inc. which was different from the address of River Parish Services as stated on the signature card. The check was in the amount of $17,200. On August 11, 1981, Earl Harbison allegedly gained possession of GHR's check payable to River Parish Services and forged Fred Ratliff, Jr.'s name as an indorsement on the back of the check. He then negotiated the check to the Bank of LaPlace which credited the instant account in the amount of $17,200. The Bank of LaPlace collected payment on this check from GHR's drawee bank which allowed the withdrawal of the money.
On March 17, 1982 suit on open account was instituted by RPS, Inc. against GHR Energy Corporation alleging nonpayment of the $17,200 invoice for services rendered. GHR answered denying the allegations of the plaintiff and amended its answer averring the debt sued upon had been extinguished by payment on August 8, 1981. Subsequently, the plaintiff's petition was supplemented and amended to name the Bank of LaPlace as a party defendant. The plaintiff alleged the Bank of LaPlace was liable for negligently allowing the removal of the signature card from the bank premises; negligently allowing the forgery *1292 of the signature of Fred Ratliff, Jr.; negligently allowing the forgery of the indorsement on GHR's check No. 053315 dated August 8, 1981; and finally, for failing to obtain the full legal status and tax identification number of the customer, River Parish Services. On August 6, 1982, GHR filed a third-party demand against the Bank of LaPlace alleging negligence on the part of the bank in opening an account in the name of River Parish Services. The defendant Bank of LaPlace answered RPS, Inc.'s amending and supplemental petition as well as GHR's third-party demand denying all allegations of negligence and further averring its status as a depositary collecting bank acting at all times in good faith and in accordance with reasonable commercial standards. The trial court held in favor of River Parish Services, Inc. against the Bank of LaPlace and dismissed all claims which River Parish Services, Inc. and the Bank of LaPlace asserted against GHR Energy Corporation.
ISSUES
(1) Did the Bank of LaPlace fail to maintain standards of "commercial reasonableness" so as to become liable under Louisiana Revised Statute 10:3-419?
(2) Is the "fictitious payee" rule of Louisiana Revised Statute 10:3-405 applicable so as to relieve the bank of liability?
The plaintiff-appellee, River Parish Services, Inc. invokes Louisiana Revised Statute 10:3-419(1) and (3) as its basis for recovery against the Bank of LaPlace. Section (1) provides when a person pays an instrument on a forged indorsement, he is liable to the true owner; however, section (3) provides the collecting bank which has acted in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative in dealing with an instrument on behalf of one who is not the true owner is not liable to the true owner beyond the amount of any proceeds remaining in his hands. While the plaintiff-appellee admits the Bank of LaPlace acted in good faith, it contends the bank did not act in accordance with reasonable commercial standards and thus is liable for the full amount of $17,200 even though the bank has retained no proceeds.
The vice president of the Bank of LaPlace testified to the following internal banking procedures: The bank requires no identification such as a driver's license to be presented upon opening a new checking account nor upon making a deposit into the account. The bank requires a signature card be signed on the premises but then allows the card to be taken from the bank and signed by whomever the holder of the card subsequently decides should have authority to use the checking account. When a deposit is made into an account, the bank checks the signature of the indorser against the signature on the signature card.
While the evidence demonstrates the bank's employees did not stray from the bank's routine procedures with regard to the transactions involved in this case, the bank wholly failed to introduce evidence of the standards of "commercial reasonableness" in the industry. In establishing compliance with reasonable commercial standards in a defense to an action for conversion of an instrument, the bank's burden of presenting evidence concerning applicable standards of the banking industry and its adherence thereto necessitates more than merely demonstrating that it did not fail to reasonably comply with its own commercial standards. Travelers Insurance Company v. Jefferson National Bank at Kendall, 404 So.2d 1131, 1133 (Fla.App.1981); Barnett Bank of Miami Beach v. Lipp, 364 So.2d 28, 30 (Fla.App. 1978). While it is difficult to determine the trial court's reasons for judgment (the trial court adopted GHR's memorandum as its reasons for judgment), it is apparent the trial court found the bank was negligent. In light of the bank's failure to present evidence concerning the applicable standards of the banking industry, it cannot be said the trier of fact erroneously determined the bank to have been negligent. The bank failed entirely in countering the assertions by RPS, Inc. that failure to require *1293 identification of "River Parish Services" upon opening a checking account and failure to require personal identification of one who makes a deposit and of one who makes an indorsement of a check constitutes negligence.
The Bank of LaPlace invokes Revised Statute 10:3-405, the fictitious payee or imposter rule, and contends the indorsement by "Fred Ratliff" was effective. Section (1)(c) provides that an indorsement by any person in the name of a named payee is effective if an agent or employee of the drawer has supplied him with the name of the payee intending the latter to have no such interest. There is no evidence in the record of GHR's office administration procedures, and specifically, there is no evidence that Earl Harbison caused GHR to make out the instrument in the name of River Parish Services. It is possible he simply stole the check after it had been made out. Therefore, the bank has failed to demonstrate this case fits within the narrow exception of the fictitious payee rule of section 10:3-405, and the indorsement of Fred Ratliff is not deemed effective.
The policy of the fictitious payee rule is to shift the loss of a forged indorsement by an employee of the maker-employer to the employer, who is in a better position to prevent the fraud, rather than to the drawee-bank. Barnett Bank of Miami Beach v. Lipp, 364 So.2d 28, 29. The Barnett court held when a payee sues a collecting bank, there is no policy reason for shifting the risk of loss to the payee since the bank was in a superior position to the payee in preventing fraud against the payee from occurring. See also Sun `N Sand, Inc. v. United California Bank, 148 Cal.Rptr. 329, 582 P.2d 920, 21 Cal.3d 671 (1978). In the instant case, the record supports a finding the defendant collecting bank was in a better position to apprehend the employee forgery than was the payee or the employer. While the Bank of LaPlace attempted at trial to demonstrate GHR had been placed on notice of its employee's fraud by a similar transaction previously made, the record provides practically no evidentiary support of this allegation. The Bank of LaPlace, on the other hand, dealt face to face with the perpetrator of the fraud and had opportunity to discover irregularities in transactions with him.
Accordingly, the judgment is hereby affirmed, costs of this appeal to be assessed against the appellant.
AFFIRMED.
GAUDIN, J., dissents.
GAUDIN, Judge, dissenting.
I respectfully dissent, being of the opinion that the Bank of LaPlace acted in good faith in accordance with reasonable commercial standards.