990 A.2d 1078

**Stephen W. SCHULTZ, Personal Representative of the Estate of Melvin Ray Schultz**

v.

**BANK OF AMERICA, N.A.**

**No. 28 Sept.Term, 2009.**

Court of Appeals of Maryland.

March 12, 2010.

16

Stephen J. Kleeman, Towson, MD, for Petitioner.

Jeffrey M. Geller (Jefferson V. Wright of Miles & Stockbridge, P.C., Towson, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, BARBERA and ADKINS, JJ.

GREENE, Judge.

In this case, Bank of America, N.A. ("the Bank"), added an individual's name to a checking account opened in the name of Melvin Ray Schultz ("Schultz"), the now-deceased father of Stephen Schultz ("Petitioner"). Petitioner sued the Bank, alleging that the Bank acted negligently and breached its contract with Schultz when it added the individual's name to, and allowed her to withdraw funds from, the account. A

Baltimore County jury found in Petitioner's favor, but the Court of Special Appeals reversed that judgment. The intermediate appellate court concluded, in an unreported opinion, that expert testimony was necessary to establish the Bank's standard of care when adding an individual's name to a bank account and that Petitioner had produced no evidence on that issue. In addition, the court concluded that Petitioner had not produced sufficient evidence to establish that the Bank breached its contract with Schultz.

Upon our own review of the case, we shall affirm the judgment of the Court of Special Appeals. Petitioner could not have succeeded on his negligence claim without producing expert testimony establishing the Bank's standard of care. Adding an individual's name to a bank account involves an understanding of internal bank procedures that the trier of fact cannot be expected to appreciate. Accordingly, expert testimony was necessary to explain to the jury the reasonable commercial standards prevailing in the area with respect to adding names to a customer's checking account and verifying the identities of the signatories. For the same reason, Petitioner could not have succeeded on his breach of contract claim. That claim was based on a breach of the Bank's implied contractual duty to exercise ordinary care; Petitioner, however, produced no expert testimony establishing the extent of the obligation imposed by that standard of care. Accordingly, we agree with the Court of Special Appeals' decision to reverse the judgment of the trial court.[1]

## I.

### *Procedural History*

Petitioner, in his capacity as Personal Representative of the Estate of Melvin Ray Schultz, filed the underlying action in

---

1. The Bank has requested that we consider whether the trial court properly aggregated two amounts awarded to Petitioner, should we rule in favor of Petitioner on both claims. As we rule against Petitioner on both claims, and because the Bank presented no cross-petition for certiorari, we need not consider this issue.

the Circuit Court for Baltimore County, seeking to recover funds that he alleges were wrongfully disbursed from a bank account that Schultz held with the Bank. Petitioner presented two claims that are relevant to this appeal, both concerning the Bank's action in adding the name of Robin Holbrook ("Holbrook") to Schultz's account and in allowing Holbrook to withdraw funds from the account.[2] In Petitioner's first claim, Petitioner argued that the Bank had breached a contract with Schultz. In his second claim, Petitioner argued that the Bank had negligently handled Schultz's account.

The trial took place on June 25 and 26, 2007. After Petitioner rested his case, the Bank moved for judgment and the trial court denied the motion. The Bank again moved for judgment after the close of all the evidence, which the trial court also denied. The jury considered the two counts and found in favor of Petitioner on both, awarding him $23,475 on the breach of contract claim and $7,600 on the negligence claim. Over the objection of the Bank, the trial court awarded Petitioner an aggregate amount of $31,075.

The Bank noted a timely appeal, and the Court of Special Appeals reversed the judgment of the trial court. The intermediate appellate court concluded that the trial court should have granted Petitioner's motion for judgment because Petitioner produced no expert testimony proving the Bank's breach of the standard of care for the negligence claim and produced insufficient evidence to show that the Bank had breached a contract with Schultz. Petitioner subsequently petitioned this Court for a writ of certiorari, which we granted. *Schultz v. Bank of America,* 408 Md. 149, 968 A.2d 1064 (2009).

### *Facts of the Case*

Schultz died on July 5, 2005, at the age of 81. There is some dispute about the events leading up to his death, but the parties seem to agree that Schultz's health and well-being

---

2. Petitioner also presented several claims against Holbrook, but she did not participate at trial. A default judgment was entered against her.

were in decline in the months before he died. He had been in a car accident in February 2005, had been drinking heavily, and had neglected himself and his property. Before he died, however, he developed some sort of relationship with Holbrook, who had moved into Schultz's home. Holbrook was apparently acting as Schultz's care giver, but Petitioner alleges that Holbrook also took advantage of Schultz by having her name added to Schultz's account with the Bank. Petitioner has advanced two theories as to how this occurred, one in which Holbrook coerced Schultz into adding her name to his account and another in which Holbrook had her name added through forgery. There is no dispute that Holbrook's name was in fact added to Schultz's account and that she made withdrawals from the account.

Petitioner filed suit against the Bank, alleging that the Bank negligently handled Schultz's account and that the Bank breached its contract with Schultz. At trial, Petitioner presented three witnesses. The first witness, a handwriting expert, examined several of Schultz's known signatures and the signature card that was used to add Holbrook's name to Schultz's bank account. He opined that the signature purporting to be Schultz's on the signature card was not the signature that Schultz used in the normal course of business. He also testified that several checks drawn on Schultz's account appeared to have been forged with Schultz's signature. The next witness, a friend of Schultz's, testified to the deterioration of Schultz's health leading up to his death, specifically his heavy drinking and his lack of attention to his own property. She also testified to her observance of Holbrook at Schultz's home and her understanding of what Schultz intended for his estate. Petitioner's third witness, his former attorney, explained that the week after Schultz's death, on July 11, 2005, she obtained a temporary restraining order directing the Bank to freeze Schultz's account, that she gave a copy of the temporary restraining order to a branch manager of the Bank

that day,[3] and that the branch manager informed her that the account was then frozen.[4]

---

3. On cross-examination, Petitioner's former attorney admitted that she served the temporary restraining order on a branch manager of the Bank, but that she could not remember if she also served the Bank's resident agent, as required by Maryland Rule 2–124(d). The only other evidence regarding the Bank's receipt of the order was the attorney's testimony that the branch manager told her the account was frozen and a letter from the Bank acknowledging that the account was frozen. The letter was dated July 13, 2005, two days after the attorney gave the order to the branch manager. There was no evidence establishing when, or if, the resident agent received a copy of the order or what the branch manager did with the order after receiving it.

4. In his complaint, Petitioner alleged, among other things, that the Bank breached its contract with Schultz and was negligent when it "permitt[ed] the withdrawal of funds from [Schultz's] Account in violation of [the] July 11, 2005 Temporary Restraining Order." This allegation is presumably based on Schultz's bank records, which suggest that the Bank may have disbursed funds from Schultz's account on July 12, 2005, the day after Petitioner's former attorney gave the order to the bank manager.

 We will not, however, consider the possible impact of the order for a number of reasons. First, the record does not establish that the Bank actually disbursed funds after the bank manager received the order. Schultz's bank statements show that several ATM withdrawals from Schultz's account were "posted" on July 12, but the line items for those withdrawals suggest that the funds were actually disbursed on previous days. One check and one cash withdrawal were also "posted" on July 12, but there was no evidence establishing that this was actually the date when funds were disbursed. Petitioner did not present any testimony or other evidence explaining whether these funds were actually disbursed after the Bank was given the order.

 Second, Petitioner did not establish when, if ever, the order was properly served on the Bank. As explained *supra* note 3, Petitioner's former attorney admitted that she did not remember whether she ever served the order on the Bank's resident agent, as required by Maryland law. Petitioner presented no other evidence establishing what the branch manager did with the order after he received it or if the resident agent ever received the order. The Bank acknowledged by a letter dated July 13, 2005, that it received the order and froze Schultz's account, but there is no evidence suggesting that the Bank disbursed funds from Schultz's account after July 12, 2005.

 Third, any argument regarding the order is not properly before us for review. *See* Md. Rule 8–131 (explaining that an appellate court will ordinarily not decide a non jurisdictional issue "unless it plainly appears by the record to have been raised in or decided by the trial court"). Petitioner did not request, and the jury did not receive, instructions about how the order might have impacted their verdict.

Petitioner was the final witness. Like Schultz's friend, Petitioner testified to the deterioration in Schultz's health, and, like the handwriting expert, he testified that the signatures on some checks drawn from Schultz's bank account were not authentic. He also explained that there had been activity on Schultz's ATM account after Schultz met Holbrook, even though Schultz never used an ATM. In addition, he explained that he attempted to have the Bank freeze Schultz's account on the evening of, and the day after, Schultz's death, over the phone and in person, but that the Bank would not allow him to do so. He further testified that he had never met Holbrook before Schultz's death, although he admitted that he did not know if Schultz wanted Holbrook to have any money. Petitioner did not present any testimony, expert or otherwise, regarding the standard of care applicable to a bank when adding an individual's name to a customer's account. He did submit into evidence, among other documents, the signature card that Schultz signed when he initially opened his account with the Bank, the signature card adding Holbrook's name to Schultz's account with the Bank, the letter from the Bank indicating that the account had been frozen, checks paid from the account, the February through July 2005 bank statements for the account, and the Bank's training documents regarding the addition of names to accounts.

After Petitioner rested his case, the Bank moved for judgment, arguing that Petitioner had presented no evidence of a contract between Schultz and the Bank and that Petitioner had failed to prove his capacity to sue on Schultz's behalf. The trial court denied the Bank's motion. The Bank and Petitioner then both read into evidence portions of the deposition of one of the Bank's Banking Center Managers, who was unavailable to testify. According to the manager's deposition

---

Petitioner also presented no arguments about the order in the briefs he submitted to the Court of Special Appeals and to this Court. When asked about the order during oral arguments before this Court, Petitioner did not explain its relevance. We are not inclined to consider an argument that was not advanced in the trial court, the intermediate appellate court, or this Court.

testimony, Schultz and Holbrook had appeared together at his bank branch to have Holbrook added to his account. The manager also explained the procedure by which he claimed to have received identification from both Schultz and Holbrook and stated that he had witnessed both Schultz and Holbrook signing the signature card.[5]

After the presentation of this testimony, the Bank closed its case and renewed its motion for judgment. In the motion, the Bank first argued that Petitioner had failed to prove the standard of care for his negligence claim because he had not produced expert testimony establishing the Bank's duty to Schultz. Second, the Bank argued that Petitioner had failed to provide any evidence supporting the causation element of his negligence claim. Third, the Bank argued that Petitioner had failed to prove his breach of contract claim because he had not presented any evidence of a contract provision that had been breached. Petitioner argued in response that expert testimony was not necessary to show the standard of care, that he had established the elements of his negligence claim, and that the Bank had breached the implicit contractual duty of ordinary care that arose when Schultz opened his account with the Bank.[6] The trial court denied the Bank's motion, concluding that expert testimony was unnecessary to establish the standard of care on the facts of this case, that there was sufficient evidence to submit the negligence claim to the jury,

---

**5.** Petitioner has argued in his briefs submitted to this Court and to the Court of Special Appeals that "an examination of the signature card belied" the testimony of the Banking Center Manager. He notes that Schultz's social security number is printed on the card, but Holbrook's is handwritten. He also notes that Schultz's signature is next to Holbrook's social security number and Holbrook's signature is next to Schultz's social security number. These aspects of the signature card do not affect our conclusion that expert testimony was necessary to establish the applicable standard of care. Petitioner also asserts that the "signature card was printed on a personal computer," but we see no evidence in the record supporting this assertion.

**6.** At no time at trial did Petitioner offer to provide expert testimony regarding the Bank's standard of care. The issue of expert testimony arose only when the Bank moved for judgment after the close of its case.

and that the signature card could establish that Schultz and the Bank had entered into a contract.[7]

The two counts were submitted to the jury. Among other things, the jury was instructed that "[a] bank must exercise ordinary care with respect to custody of funds belonging to its depositor" and that ordinary care "means observance of the reasonable commercial standards prevailing in the area in which the person is located with respect to the business in which the person is engaged." The jury was also instructed

---

7. In denying the Bank's motion regarding the contract claim, the trial court stated:

On the motion with respect to the contract issue, I'm going to deny the motion with respect to that count. I think the law is pretty clear that a signature card is a contract and creates a contract. I think there's enough evidence to send it to the jury on that.

In regard to expert testimony, the trial court initially opined, during arguments on the Bank's motion, that expert testimony might be necessary because "not everyone is familiar with how banks operate." The following day, however, when the court issued its ruling, the court came to the opposite conclusion. Referring to *Free State Bank & Trust v. Ellis*, 45 Md.App. 159, 411 A.2d 1090 (1980), which we discuss in this opinion, the trial court stated:

Finally, on the issue of expert witnesses, I did read the [*Free State*] case last evening, and [*Free State*] doesn't really come out and say you need an expert. It says, although there may be situations that necessitate expert testimony relative to the standard of care required of a bank in dealing with customers, this case is not of that category.

It says, certainly no expert testimony was needed to show that banks do not ordinarily release the collateral of a customer and take a substitution of a paper writing, et cetera, et cetera.

Then they conclude by saying, we think, even if expert testimony is ordinarily needed to prove the standard of reasonable care used by banks in the community in its dealing with customers, the case now before us is of the type that the average juror would know without expert testimony that banks do not ordinarily do what the appellate [sic] bank did in this case.

There was no expert testimony required in that case. We think, even if expert testimony is ordinarily needed, they don't, even though expert testimony is ordinarily needed so yesterday I thought expert testimony would certainly be helpful, and may be even a prerequisite, but, apparently, it's not the case under the current law of Maryland anyway. You might change that law depending on the outcome of this case.

The trial court did not specifically address the Bank's argument that Petitioner had not provided evidence of causation for his negligence

that "[t]he burden of proving the bank's failure to exercise ordinary care is on [Petitioner]."[8] The jury subsequently found in favor of Petitioner on both the negligence and contract counts, awarding Petitioner $23,475 for the breach of contract claim and $7,600 for the negligence claim.[9] Over the objection of the Bank, which argued that the two amounts were for a single injury and therefore Petitioner was only entitled to the larger amount, the trial court ruled that Petitioner was entitled to the aggregate amount of $31,075.

The Bank noted a timely appeal and the Court of Special Appeals reversed the judgment of the trial court. The intermediate appellate court concluded that the trial court should have granted Petitioner's motion for judgment because Petitioner produced no expert testimony establishing the Bank's standard of care for the negligence claim. The court came to this conclusion because, in its view, "the standard of care required for adding someone to a bank . . . account is not 'well within the ordinary province of jurors.'" The court further explained that, in its view, jurors "may not be knowledgeable about the internal bank procedures utilized in adding someone to an account" and that the Bank's own operating procedures are "hardly evidence of the standard of care for the entire banking industry." The intermediate appellate court also concluded that Petitioner had produced insufficient evidence to establish the breach of contract claim. The court based this conclusion on the fact that Petitioner failed to enter into evidence any of the documents that established the terms of the contract between Schultz and the Bank and on its view that "there was insufficient evidence presented at trial to show that" the Bank breached an implied duty to use ordinary care in disbursing Schultz's funds.

---

claim, but the court did conclude that Petitioner had "a sufficient claim independent from the contract claim."

8. Both parties were given an opportunity to except to the jury instructions. Neither party did so.

9. The record provides no explanation for why the jury awarded these particular dollar amounts.

Petitioner presented the following question in his petition for writ of certiorari:

1. Is an expert opinion necessary to establish the standard of care for a [b]ank when adding a customer to an account[?]

2. Does this case overrule or cast doubt on prior precedents of this [Court] and the Court of Special Appeals as to the necessity of expert opinion testimony as establishing the standard of care for [b]anks and other industries[?]

3. Does the implied duty of ordinary care implicit in a depositor-[b]ank contractual relationship require proof of any evidence beyond this implied duty[?]

Under the facts of this case, we answer the first and third questions in the affirmative and the second question in the negative.

## II.

### *Negligence*

■ The first two questions presented in this case concern the applicable standard of care in a case where negligence has been alleged against a bank. Specifically, we have been asked to determine whether expert testimony is necessary to establish the standard of care for a bank and whether such a requirement would deviate from our prior cases. Under the facts of this case, we conclude that expert testimony was necessary to establish the standard of care. This case involved alleged negligence in regard to internal bank procedures that the trier of fact could not be expected to appreciate without the aid of expert testimony. This conclusion is consistent with our previous decisions, as well as those of the Court of Special Appeals, involving allegations of negligence by a professional.

■ In a negligence case, there are four elements that the plaintiff must prove to prevail: "a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat'l Bank*, 307 Md. 527, 531, 515 A.2d 756,

758 (1986). In regard to the duty a bank owes to its customers when disbursing the customers' funds, banks are not to be held strictly liable for every wrongful disbursement. *See Commonwealth Bank v. Goodman,* 128 Md. 452, 459, 97 A. 1005, 1008–09 (1916) (noting that a bank is not required to take every possible precaution against wrongful disbursements). Instead, our case law and the comments to the Maryland Uniform Commercial Code ("Commercial Code") establish that a duty of "ordinary care" applies. *See Taylor v. Equitable Trust Co.,* 269 Md. 149, 155–56, 304 A.2d 838, 841–42 (1973) (applying the ordinary care standard to a bank's alleged negligence in disbursing a customer's funds); Md. Code (1975, 2002 Repl.Vol.), § 3–103 of the Commercial Law Article, cmt. 5 (explaining that the duty of ordinary care applies to banks); *see also* § 4–103 of the Commercial Law Article, cmt. 4 (explaining that "banks come under the general obligations of the use of good faith and the exercise of ordinary care"). The Commercial Code defines "ordinary care" as the "1) observance of reasonable commercial standards, 2) which prevail in the area in which the person is located, 3) with respect to the business in which the person is engaged." *State Security v. American General,* 409 Md. 81, 117, 972 A.2d 882, 903 (2009) (quoting § 3–103(a)(7) of the Commercial Law Article). A bank customer may bring a negligence suit against a bank for a violation of this duty of ordinary care. *Taylor,* 269 Md. at 155–56, 304 A.2d at 841–42.

 Where the plaintiff alleges negligence by a professional, expert testimony is generally necessary to establish the requisite standard of care owed by the professional. *Rodriguez v. Clarke,* 400 Md. 39, 71, 926 A.2d 736, 755 (2007). This is because professional standards are often "beyond the ken of the average layman," such that the expert's testimony is necessary to elucidate the relevant standard for the trier of fact. *Bean v. Dept. of Health,* 406 Md. 419, 432, 959 A.2d 778, 786 (2008) (quoting *CIGNA v. Zeitler,* 126 Md.App. 444, 463, 730 A.2d 248, 259–60 (1999)); *see also* Md. Rule 5–702 (allowing the admission of expert testimony if it will assist the trier of fact to understand the evidence or to determine a fact in

issue). In a case of alleged negligence by a professional, "the plaintiff bears the burden of overcoming the presumption that due skill and care were used." *Crockett v. Crothers,* 264 Md. 222, 224, 285 A.2d 612, 614 (1972). If the plaintiff presents no such evidence, the trial "court may rule, in its general power to pass upon the sufficiency of the evidence, that there is not sufficient evidence to go to the [trier of fact]." *Rodriguez,* 400 Md. at 71, 926 A.2d at 755 (quoting *Fink v. Steele,* 166 Md. 354, 361, 171 A. 49, 52 (1934)).

We do not, however, require expert testimony to establish the defendant's standard of care in every case involving alleged negligence by a professional. To the contrary, we have explained that sometimes the alleged negligence, if proven, would be so obviously shown that the trier of fact could recognize it without expert testimony. *Crockett,* 264 Md. at 224, 285 A.2d at 614. For example, an expert witness is not needed to explain the standard of care in cases where a dentist extracts the wrong tooth, a doctor amputates the wrong arm or leaves a sponge in a patient's body, or an attorney fails to inform his client that he has terminated his representation of the client. *Central Cab Co. v. Clarke,* 259 Md. 542, 551, 270 A.2d 662, 667 (1970). In those cases, the alleged negligence is so obvious that the trier of fact could easily recognize that such actions would violate the applicable standard of care.

The Court of Special Appeals has considered whether expert testimony is necessary to establish the standard of care in cases involving alleged negligence by a bank. In two such cases, however, the Court of Special Appeals has concluded that expert testimony was not necessary. In *Saxon v. Harrison,* 186 Md.App. 228, 287–91, 973 A.2d 841, 876–79 (2009), the defendant bank paid on a check that had been indorsed with only part of the payee's name. This not only violated the instructions on the back of the check but also violated the bank's own internal training guidelines.[10] *Saxon,* 186 Md.App.

---

10. We acknowledge that the Bank, in the present case, may have violated its own internal training guidelines, like the bank in *Saxon v.*

at 290, 973 A.2d at 877. The Court of Special Appeals held that the issue of whether these actions violated the bank's standard of care was not "beyond the ken of the average lay[person]" and therefore expert testimony was not necessary. *Saxon*, 186 Md.App. at 290–91, 973 A.2d at 878 (quoting *Wood v. Toyota*, 134 Md.App. 512, 518, 760 A.2d 315, 318 (2000)). The negligence of the actions proven in *Free State Bank & Trust v. Ellis*, 45 Md.App. 159, 411 A.2d 1090 (1980), was similarly obvious. In that case, the bank had "release[d] the collateral of a customer and take[n] in substitution thereof a paper writing which [was] not collateral, and which [did] no more than allow the bank to collect monies due on the collateral and credit it to the account of another." *Ellis*, 45 Md.App. at 163, 411 A.2d at 1092. The court concluded that this action was so negligent that "the average juror would know without expert testimony that banks simply do not ordinarily do what the ... Bank did in this case." *Ellis*, 45 Md.App. at 164, 411 A.2d at 1092.

*Saxon* and *Ellis* stand for the proposition that expert testimony may sometimes be unnecessary for the trier of fact to

---

*Harrison*, 186 Md.App. 228, 290, 973 A.2d 841, 877 (2009). Petitioner has alleged that the Bank failed to obtain identification from Holbrook and Schultz when Holbrook was added to Schultz's account, which would have violated the Bank's training documents that Petitioner submitted into evidence. We do not, however, consider this determinative. First, even if Petitioner had proven that the Bank violated its internal guidelines, that would not have satisfied Petitioner's burden of establishing the applicable standard of care. The Bank's internal guidelines alone do not establish the reasonable commercial standards in the banking industry because a bank's own standards may be more or less strict than the industry standard. *See Inventory Locator Service, Inc. v. Dunn*, 776 S.W.2d 523, 527 (Tenn.Ct.App.1989) (explaining that although a bank's failure to obey its own procedures may be indicative of negligence, those procedures "cannot in and of themselves be equated with reasonable commercial standards"); *River Parish Services, Inc. v. Goodhope Refineries*, 457 So.2d 1290, 1292 (La.Ct.App.1984) (explaining that a bank's compliance with reasonable commercial standards cannot be shown simply by showing the bank's compliance with its own internal procedures). Second, the bank in *Saxon* not only violated its training guidelines, but also ignored instructions on the back of a customer's check. These instructions established an expectation on the part of the customer in *Saxon*, but the training documents in the present case did not.

appreciate a bank's duty to its customers. In those cases, each bank committed an act that was so obviously negligent that the trier of fact could recognize that the bank had violated its duty to the plaintiffs without the aid of expert testimony.[11] *Saxon* and *Ellis* do not, however, stand for the proposition that expert testimony is always unnecessary in cases involving alleged negligence by a bank. Quite to the contrary, both *Saxon* and *Ellis* stated that "there may be situations that necessitate expert testimony relative to the standard of care required of a bank in dealings with customers" and that expert testimony might be "ordinarily needed to prove the standard of reasonable care used by banks in the community in its dealings with its customers." *Saxon,* 186 Md.App. at 288–89, 973 A.2d at 876–77 (quoting *Ellis,* 45 Md.App. at 163–64, 411 A.2d at 1092–93).

The conclusion that expert testimony may be necessary to establish a bank's standard of care is also consistent with our past cases. In *Taylor,* the defendant bank transferred funds from a customer's account to a third party at the third party's request. 269 Md. at 151–54, 304 A.2d at 839–41. The bank did not determine whether the customer had authorized the transfer. *Taylor,* 269 Md. at 158, 304 A.2d at 843–44. We did not address the necessity of expert testimony in *Taylor,* but we noted that the bank's operations officer testified that written instructions from the customer were "customarily required" before making this sort of transfer.[12] 269 Md. at

---

**11.** Petitioner has cited another case, involving an insurance company, that similarly involved actions that were so obviously negligent that no expert testimony was necessary. *CIGNA v. Zeitler,* 126 Md.App. 444, 469, 730 A.2d 248, 261 (1999) (holding that no expert testimony was necessary to show the standard of care when an insurance company completely failed "to inform a client that the coverage actually obtained differs from what was sought"). The bank's obvious negligence also explains the lack of expert testimony on the standard of care in *Bank of So. Md. v. Robertson's Crab House, Inc.,* 39 Md.App. 707, 716–18, 389 A.2d 388, 394–95 (1978) (affirming summary judgment against a bank that allowed the plaintiff's employee to divert the plaintiff's funds to his own account despite his complete lack of actual or apparent authority).

**12.** Expert testimony may not have even been necessary in *Taylor v. Equitable Trust Co.,* 269 Md. 149, 304 A.2d 838 (1973), due to the

158, 304 A.2d at 843. We also did not discuss the necessity of expert testimony in *Dominion Constr. v. First Nat'l Bank,* 271 Md. 154, 315 A.2d 69 (1974). We did, however, conclude that a negligence claim against a bank could not succeed when the plaintiff "presented no evidence of what was required by ordinary banking standards." *Dominion,* 271 Md. at 164–67, 315 A.2d at 74–76. In *Gillen v. Maryland Nat'l Bank,* 274 Md. 96, 333 A.2d 329 (1975), the necessity of expert testimony was similarly not at issue. A review of the record in that case reveals, however, that the plaintiff elicited testimony from two bank executives about banking practices from which the trial judge, acting as trier of fact, could have determined the standard of care.

In other cases, plaintiffs have offered expert testimony to establish a bank's standard of care. We did not explain whether expert testimony was necessary to establish a bank's standard of care in *Jacques.* We did, however, note that the plaintiff had produced "expert testimony from which the jury could have determined an applicable standard." *Jacques,* 307 Md. at 544, 515 A.2d at 764. In *Vinogradova v. Suntrust,* 162 Md.App. 495, 875 A.2d 222 (2005), the Court of Special Appeals specifically focused on the plaintiff's failure to establish the bank's standard of care. In that case, the court concluded that the plaintiff had failed to prove her case because her expert on the bank's standard of care failed to set forth "concrete evidence . . . as to what specific industry standards of care were violated, how they were violated, and how their violation caused Ms. Vinogradova harm." *Vinogradova,* 162 Md.App. at 507, 875 A.2d at 229. While these cases do not affirmatively state that expert testimony is necessary to establish a bank's standard of care, they do demonstrate the practice of using expert testimony to establish the standard.[13]

seemingly obvious nature of the bank's negligence. We explained that there was "no doubt" the bank was negligent when it transferred funds without determining whether the transfer was authorized. *Taylor,* 269 Md. at 158, 304 A.2d at 843.

**13.** *Commonwealth Bank v. Goodman,* 128 Md. 452, 97 A. 1005 (1916), does not support Petitioner's argument. In *Goodman,* we had no

In this case, Petitioner's negligence claim is based on his allegation that the Bank failed to satisfy its duty of ordinary care in regard to its handling of Schultz's checking account. Specifically at issue in this appeal is Petitioner's claim that the Bank did not satisfy that duty when it "fail[ed] to properly add Holbrook to the account and verify[ ] her and [Schultz's] identities." [14] At trial, Petitioner did not present evidence purporting to show how the Bank was negligent when it added Holbrook's name to Schultz's account. Instead, Petitioner primarily supported his negligence claim with testimony from a handwriting expert. The handwriting expert opined that Schultz's signature had been forged on the signature card upon which the Bank relied when it added Holbrook's name to Schultz's account. The implication from this testimony was that the Bank added Holbrook's name to Schultz's account based on a forged signature and that the Bank should have used greater care to discover the forgery. [15] Petitioner did not

reason to consider whether expert testimony was necessary to establish the bank's standard of care. Like the present case, *Goodman* involved allegedly improper withdrawals from a bank account. 128 Md. at 453, 97 A. at 1006. We identified a number of errors by the trial judge and remanded the case for a new trial. *Goodman,* 128 Md. at 464, 97 A. at 1010–11. An expert witness did testify in that case, and we rejected some—though not all—of that expert witness' testimony, but not because that testimony was unnecessary. *Goodman,* 128 Md. at 464, 97 A. at 1010. Instead, we rejected specific statements by the expert witness because they violated two evidentiary rules: assuming facts not in evidence and addressing an ultimate issue in the case. *Goodman,* 128 Md. at 464, 97 A. at 1010. The question of whether expert testimony was necessary to establish the bank's standard of care was never before the Court.

14. In his complaint, Petitioner based his negligence claim on more than just the addition of Holbrook to Schultz's account. Petitioner alleged that the Bank "owed a duty of reasonable care ..., which included a duty to refrain from permitting the withdrawal of funds from [Schultz's] [a]ccount and to refrain from re-titling the [a]ccount without proper authorization, and to comply with applicable legal authority in disbursing funds from the [a]ccount." In his petition for certiorari and briefs submitted to this Court, however, Petitioner has focused on whether expert testimony was necessary when the Bank was "sued for negligence when adding a customer to an account." Accordingly, we address that aspect of Petitioner's claim in this opinion.

15. Even if we were to assume that Schultz's signature on the signature card was a forgery, that fact in and of itself would not establish the

provide evidence of the Bank's standard of care in regard to adding Holbrook to Schultz's account.

The Bank argues that expert testimony was necessary to establish the Bank's standard of care, while Petitioner contends that "a bank seeking to assist a customer to add a name to a checking account is an experience universally shared." Accordingly, Petitioner argues, no expert testimony was necessary to explain the Bank's standard of care to the jury. We disagree with Petitioner's contention for a number of reasons. First, we cannot say with any certainty that most people have added someone's name to their bank accounts. Petitioner supports this contention by asserting that "[l]ay people are frequently called upon in today's society to prove their identifications." We disagree that these experiences provide a sufficient basis to conclude what the trier of fact would know because such experiences may vary widely from the reasonable standards in the banking industry.[16] Furthermore, the relevant activity in this case was by the bank itself, not a bank customer. Even if most people have added a name to their bank accounts, most people have certainly not acted as a bank

---

Bank's liability. The Bank would have been liable if it had failed to exercise ordinary care when it added Holbrook's name to Schultz's account, thereby allowing Holbrook to make unauthorized withdrawals from the account. As this opinion explains, however, Petitioner never established the applicable standard of ordinary care, so he could not have proven that the Bank failed to exercise ordinary care.

**16.** Petitioner compares adding a name to one's bank account to identity verification at airports or during traffic stops. There may be many reasons why banks might verify identification differently than airport security agents or police officers. For example, banks may ordinarily request identification on a random basis when adding a name to customers' accounts, to save the cost and time of checking for identification each time. Banks may not ordinarily request identification when they recognize the account holder by sight, as a way to build good will with their customers. Banks may have found that requesting identification is an ineffective method of ensuring the identity of their customers and therefore typically may not bother with such requests. Or perhaps banks do, in fact, ordinarily request identification from every customer who adds a name to an account. These uncertainties are exactly why an expert in the banking industry was necessary to explain the banking industry standards.

officer adding a name to a customer's bank account. That process may occur behind closed doors, out of the sight of the customer, and may involve numerous unknown procedures. To explain this process, a plaintiff must produce expert testimony from someone familiar with the process from a bank's perspective. Petitioner also failed to provide evidence of the reasonable commercial banking standards that prevail specifically in the relevant geographical area of the Bank, as required by the ordinary care standard.[17] Finally, banking practices are changing in the era of the Internet and other electronic banking practices.[18] Bank procedures may not be the same today as they were just a few years ago, which also means that an expert may be necessary to explain to the trier of fact what duty a bank owes to a customer.[19]

Having concluded that expert testimony was necessary to establish the duty that the Bank owed to Schultz, we also conclude that the trial court should not have submitted Petitioner's negligence claim to the jury. Petitioner carried the

---

**17.** Explaining the geographic component of the identical "ordinary care" standard in the Uniform Commercial Code ("U.C.C."), Professors White and Summers note that "[a] bank in New York might have to behave differently from a bank in Evansville." James J. White & Robert S. Summers, U.C.C. § 16–3(g), at 577 (5th ed. 2000); *see also* U.C.C. § 3–103(a)(9) (2007) (defining "ordinary care").

**18.** Professors White and Summers have noted the effect of technology on banking standards in their treatise on the U.C.C.:

It is now commonplace for payor banks to process checks electronically and without human intervention. Some banks verify randomly to see whether there are signatures on some checks, but most banks examine only checks above a certain dollar amount. Even when each check is examined there may or may not be an actual comparison of the signature on the check with a signature on file.

James J. White & Robert S. Summers, U.C.C. § 16–3(g), at 578.

**19.** The comments to the Maryland Uniform Commercial Code acknowledge the complicated nature of banking procedures, noting "the technical complexity of the field of bank collections, the enormous number of items handled by banks, the certainty that there will be variations from the normal in each day's work in each bank, the certainty of changing conditions and the possibility of developing improved methods of collection to speed the process." Md.Code (1975, 2002 Repl.Vol.), § 4–103 of the Commercial Law Article, cmt. 1.

burden of establishing that the Bank had not satisfied the duty of ordinary care in regard to its handling of Schultz's account. As we have explained, he completely failed to do so, providing no testimony, expert or otherwise, establishing the extent of that duty as it applied to the Bank in this case. Petitioner's own assertions in this case show this failure. He did not challenge the court's instruction to the jury that ordinary care was the applicable standard of care or that it was Petitioner's burden to prove that the Bank failed to exercise ordinary care. In his brief submitted to this Court, Petitioner concedes that he "presented no expert testimony as to the standard of care employed by the Bank to add a signatory to an account." In effect, Petitioner did not present the necessary facts, consistent with his own theory of the case, showing how the Bank failed to comply with the applicable industry standard, as he never established that standard.

When negligence is alleged against a bank, as in other cases of alleged negligence in a professional context, expert testimony is ordinarily necessary to establish the applicable standard of care. Such testimony is not necessary when the bank's alleged negligence, if proven, so obviously deviated from the applicable standard of care that the trier of fact could appreciate the deviation without an expert's assistance. The alleged negligence in this case, however, involved internal banking procedures that the trier of fact could not be expected to appreciate. Petitioner should have provided expert testimony to explain to the jury what banks ordinarily do to protect their customers from imposters when adding a name to the customer's account, so that the jury could then decide whether the Bank had acted in accordance with the duty of ordinary care. Instead, Petitioner provided no testimony on this issue at all. Without expert testimony to explain the duty of ordinary care, the jury could not know whether to hold the Bank accountable for failing to protect its customer's account. Petitioner therefore failed to provide any competent evidence of the duty owed to him, a necessary element of a negligence claim, and the trial court should not have submitted this claim to the jury.

We agree with the Court of Special Appeals that the trial court should have granted the Bank's motion for judgment.

## Breach of Contract

 The third question presented in this case concerns a bank's implied contractual duty of ordinary care in regard to adding a name to a customer's bank account and verifying the identities of the signatories. We have been asked to determine if the trier of fact may consider whether a bank has breached this duty if the plaintiff has provided no evidence establishing either the specific terms of the underlying contract or the standard to which the bank must adhere. We shall hold that the trier of fact may consider whether a bank has breached the implied contractual duty of ordinary care if there is any competent evidence that a contract existed between the plaintiff and the defendant bank. The trier of fact may not, however, consider such a claim unless the plaintiff provides expert testimony establishing the extent of the obligation that the duty of ordinary care imposed on the bank. In this case, Petitioner presented legally sufficient evidence to establish that there was a contract between Schultz and the Bank, but he did not provide the necessary expert testimony.

 We have explained that "[t]he relationship between a bank and its customer is contractual." *Lema v. Bank of America,* 375 Md. 625, 638, 826 A.2d 504, 511 (2003). The contract between a bank and its customers is derived by implication from the banking relationship, unless the parties modify that relationship.[20] *University Nat'l Bank v. Wolfe,*

---

20. We have frequently stated that a contract may be "implied" between a Bank and its customers, but we have never stated whether that contract is implied in fact or implied in law. Such a contract, however, is clearly implied in fact. Implied-in-law contracts, often referred to as quasi-contracts, "are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises," but are instead "obligations created by law for reasons of justice." *Caroline County v. Dashiell,* 358 Md. 83, 95, 747 A.2d 600, 606 (2000) (footnote omitted). None of our cases have suggested that the implied contract between a bank and its customers is based on a quasi-contract theory. Instead, they have explained that the contract can be implied

279 Md. 512, 514–15, 369 A.2d 570, 571 (1977) (citing numerous cases). As a result of this contractual relationship, bank customers may enforce the duty of ordinary care not only in tort, but also through an action for breach of contract. *Gillen,* 274 Md. at 101–02, 333 A.2d at 333.[21] The Commercial Code and our cases establish that the parties to a banking contract may, to some extent, determine the standards by which the duty of ordinary care will be measured, but neither party can disclaim this duty. § 4–103(a) of the Commercial Law Article; *Lema,* 375 Md. at 642, 826 A.2d at 514.

Petitioner has alleged that the Bank in this case breached a contract with Schultz when it violated the duty of ordinary care he claims the Bank owed to Schultz. In support of this claim, Petitioner provided the signature card for Schultz's account, monthly bank statements from the account, and checks drawn from the account. He did not, however, provide any other documents or testimony establishing the terms of the alleged contract between the Bank and Schultz. Nonetheless, he argues that he presented sufficient evidence to the jury that it could have found the existence of a contract with Schultz and that the Bank may have breached that alleged contract. The Court of Special Appeals disagreed, concluding that Petitioner failed to introduce into evidence "key documents" without which "it cannot be determined what were the specific terms of the contract." The Bank similarly argues that "the only evidence of a contract was a Personal Signature Card," and that Petitioner "did not introduce into evidence

---

from the facts surrounding the relationship between the customer and the bank. *See, e.g., Taylor,* 269 Md. at 156, 304 A.2d at 842 ("[T]he contract is that implied in a banking relationship.")

21. There is no contradiction in allowing a party to enforce the duty of ordinary care through a contract claim, a tort claim, or both. We noted in *Jacques v. First Nat'l Bank,* 307 Md. 527, 545, 515 A.2d 756, 765 (1986), that "[a]lthough the proof required and the measure of compensatory damages allowable may be essentially the same under either cause of action, there are other considerations . . . that make it desirable to provide a choice of actions."

any of the ... agreements or documents" that the signature card references.

On this point, we agree with Petitioner and disagree with both the Court of Special Appeals and the Bank. There is no dispute that Schultz was a customer of the Bank with respect to the checking account at issue in this case. Petitioner submitted into evidence, with no objection from the Bank, a copy of the signature card that Schultz apparently signed when he originally opened his account with the Bank on September 11, 2000. The bank statements that Petitioner submitted into evidence, with no objection from the Bank, reflected deposits and withdrawals from the account that Schultz apparently had with the Bank, and the checks Petitioner submitted into evidence, with no objection from the Bank, were apparently drawn from, and honored by, the Bank. The Bank has not denied that Schultz was one of its customers, and, to the contrary, one of the Bank's managers testified, through his deposition, to an interaction with Schultz that was consistent with that of a bank and its customer. The manager specifically referred to Schultz as "an existing customer." Moreover, we have repeatedly explained that there is an implied contractual relationship between a bank and its customers. *See University Nat'l Bank,* 279 Md. at 514, 369 A.2d at 571. Accordingly, we conclude that Petitioner established a jury question as to whether there was a contract between Schultz and the Bank.

The Bank argues that Petitioner's breach of contract claim should not have been submitted to the jury because Petitioner "fell short of proving what the terms of the contract are or, in other words, what the Bank's obligations under the contract are, as required by Maryland law." We disagree. We have stated that "the [Commercial Code] codifies the underlying contract implied between the bank and its customer that the bank will charge any item which is 'otherwise properly payable' against the depositor's account only on the order of the depositor or of someone authorized by him." *Taylor,* 269 Md. at 157, 304 A.2d at 842–43. The duty of ordinary care is one of the terms codified by the Commercial Code, and, as we

have explained, neither party can disclaim this duty. § 4–103(a) of the Commercial Law Article; *Lema*, 375 Md. at 642, 826 A.2d at 514. There was therefore no need for Petitioner to establish all the terms of the alleged contract between Schultz and the Bank because the Commercial Code provided the relevant term: the duty of ordinary care. Accordingly, the jury, if it had found that a contract existed between Schultz and the Bank, could have considered whether the Bank breached the duty of ordinary care.

The fact that such a duty may have existed, however, would not have been enough to put Petitioner's breach of contract claim before the jury. Just as with his negligence claim, Petitioner failed to present any testimony, including expert testimony, establishing the extent of the obligation created by the duty of ordinary care. To establish the duty of ordinary care, Petitioner was required to prove the "reasonable commercial standards which prevail in the area in which [the Bank] is located with respect to" banking. § 3–103(a)(7) of the Commercial Law Article. As we have explained in regard to his negligence claim, Petitioner failed to provide any evidence establishing this duty. As a result, the jury could not have known what obligation the Bank allegedly breached because Petitioner presented no competent evidence establishing the extent of the obligation. Accordingly, that claim should not have been presented to the jury. We therefore affirm the Court of Special Appeals' judgment that the trial court should have granted the Bank's motion for judgment in regard to Petitioner's breach of contract claim.

## III.

### Conclusion

Banking is frequently a complex business. When a bank has allegedly violated its duty of ordinary care, ordinarily it will be necessary to present expert testimony so that the trier of fact can understand the scope of that frequently complex duty. There will be cases where the bank's alleged actions, if proven, would so obviously violate the duty of ordinary care

that expert testimony will be unnecessary. In cases such as this, however, where the alleged violation of the duty of ordinary care is not obvious, expert testimony is necessary to assist the trier of fact in making its determination. Petitioner did not provide the necessary expert testimony, and, accordingly, the trial court should not have submitted either of Petitioner's claims to the jury.

### JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.

ADKINS, J., files dissenting opinion in which BELL, C.J., and MURPHY, J., join.

Dissenting Opinion by ADKINS, Judge, which BELL, C.J., and MURPHY, J., Join.

I respectfully dissent from the majority's holding that expert testimony was necessary to establish Bank of America's standard of care in this case. In my opinion, the alleged negligence in this case was well within a layperson's understanding, and was properly evaluated by the trial jury.

I agree that "professional standards are often 'beyond the ken of the average layman,' " and that in some cases, expert testimony is needed to "elucidate the relevant standard for the trier of fact." *See* Majority Op., *supra,* at 28, 990 A.2d at 1086 (*citing Bean v. Dep't of Health & Mental Hygiene,* 406 Md. 419, 432, 959 A.2d 778, 786 (2008) (citation omitted)). But, as the majority acknowledges, we do not require expert testimony in every case of professional negligence. *See* Majority Op., *supra,* at 29, 990 A.2d at 1086–87.

We have previously held, in other contexts, that an obvious error on the part of a professional practitioner would not require expert testimony to establish a standard of care. In *Central Cab Company v. Clarke,* 259 Md. 542, 551, 270 A.2d 662, 667 (1970), for example, an attorney failed to notify his client that he had terminated representation of the client; the omission ultimately resulted in a default judgment against the client. We analogized that case to "cases involving medical malpractice in which a dentist pulled the wrong tooth," or

where a physician amputated the wrong limb. *Id.* (*citing McClees v. Cohen,* 158 Md. 60, 148 A. 124 (1930)). Because the attorney's behavior in *Clarke* was a "clear violation of [his] duty ... the trial court should have ruled [against him] as a matter of law." *Id.*

In this case, the challenged activity was the addition of a signatory to the decedent's bank account by way of a signature card presented to the bank. The majority suggests that this process "may occur behind closed doors, out of the sight of the customer, and may involve numerous unknown procedures." Majority Op., *supra,* at 35, 990 A.2d at 1090. Such activity, the majority says, involves "internal banking procedures that the trier of fact could not be expected to appreciate." Majority Op., *supra,* at 36, 990 A.2d at 1091. This analysis is inapt. Although security mechanisms may be "internal procedures," the lack thereof may be visible and obvious.

For example, if a bank allowed an unknown person to walk in and withdraw cash based only on her oral attestation that she was the named account holder, that would be a case of obvious negligence. If the rule were otherwise, persons depositing money in that bank would have no assurance as to the safety of their funds. Without such simple precautions, the account holder would have little if any reason to maintain an account.

The obvious nature of the breach of the ordinary standard of care in this example demonstrates that negligence in security measures need not always be proven by expert testimony as to the standard of care. A layperson's everyday experience with common commercial transactions—from opening bank accounts to making credit card purchases to using automated teller machines—informs an everyday understanding of what precautions a financial institution should use in safeguarding an account holder's assets. Imposing the requirement of an expert witness to prove negligence in a commonplace transaction imposes a financial barrier to a litigant who has been injured, and should not be done lightly. The duty of care owed by Bank of America to Schultz falls within the everyday

experience and common sense category. Whatever Bank of America's professional standard of care might have been, it logically could not have been less than a reasonable person's duty to take ordinary care in day-to-day life.

In determining the standard of care in a negligence action, "[t]he interest that must be sacrificed to avoid the risk is balanced against the danger." 3 Fowler V. Harper, et al., *Harper, James And Gray On Torts* § 16.9, at 524 (3d Ed. 2007). The jury could have concluded that a reasonable bank would carefully examine identification before adding a signatory to an account, in order to protect the assets of its borrowers. A jury could certainly determine that a bank violated this reasonable care standard if it allowed adding a signatory to an account based on a document that the bank had reason to know was not signed by the account holder.

Again I look to the seminal torts treatise, *Harper, James and Gray on Torts* in which the authors opine:

> As a general proposition it is not essential to a party's case that it prove or otherwise show what its opponent *should have done* in the circumstances. It is enough to show *what the opponent did* and what the circumstances were. It is then for the jury to determine whether, in the light of their common experience in human affairs, they find he failed to act as a reasonable person would have acted. . . . In this sense the jury need not fix or agree on a standard of conduct regarding precautions to be taken, but need only find that the conduct of the party falls short of *any* standard that they would agree on as reasonable.[1]

*Id.* § 17.1 at 600–02 (footnote omitted). This treatise also explains that "[e]xcept for malpractice cases (against a doctor, dentist, or the like) there is no general rule or policy *requiring* expert testimony as to the standard of care, and this is true even in the increasingly broad area wherein expert opinion will be received." *Id.* § 17.1 at 605 (footnote omitted).

---

1. They also provide extensive examples of cases where negligence was proven without expert testimony. 3 Fowler V. Harper, et al., *Harper, James And Gray On Torts* § 16.9, at 600–06 (3d Ed. 2007).

In this case, Schultz argued that the signature card presented to the bank was a document that the bank, in the exercise of ordinary care would have known was a forgery. Schultz called an expert witness to testify that the decedent's signature on the card was fabricated. This fact was disputed. The jury may have weighed the expert testimony about the signature along with its own examination of the signature card, and determined that the forgery was sufficiently obvious that Bank of America should have recognized the card as a forgery. *See* Joseph F. Murphy, Jr., *Maryland Evidence Handbook* § 1104(A), at 457 (3d Ed. 1999 & 2008 Cum.Supp.) ("The trier of fact (judge or jury) is permitted to compare an authenticated writing with the disputed writing."). Although the bank would not have the benefit of the expert testimony at the time of the transaction, the bank manager testified that he checked the identifications of Schultz and Holbrook, so he could have compared Schultz's signature on his identification document with the signature on the signature card used to add Holbrook's name to Schultz's bank account.

Additionally, the jury could also have taken into account that the signature card was printed on a personal computer rather than a bank generated document, that the decedent's Social Security Number was electronically printed while Holbrook's Social Security Number was handwritten, and that the two signatures were transposed. All of these discrepancies could inform the jury's evaluation of both the signature card itself and Bank of America's level of negligence in allowing Holbrook to be added to the account.

In considering the evidence, the jury was not being called upon to evaluate security protocols for an international wire transfer or mechanisms for operating "sweep" accounts, an electronic method to maximize the interest customers earn on their money. Rather, it was reviewing a commonplace transaction involving common sense procedures. It was appropriate for the jury to rely on its members' experiences with, and expectations about, commonplace banking transactions.

The jury verdict, therefore, was a declaration that Bank of America failed to adhere to even the ordinary standard of care charged to a reasonable person. This standard is by definition the minimum that the bank could have employed, and no expert testimony was needed to define a hypothetically greater professional standard of care. The jury determined that Bank of America was negligent under this standard, and the jury verdict should stand. I would reverse the judgment of the Court of Special Appeals.

Chief Judge BELL and Judge MURPHY authorize me to state that they join in this dissenting opinion.