***Board of Trustees, Community College of Baltimore County v. Patient First Corporation***
No. 89, September Term 2014


**Indemnification - Construction of Contract Provision.** Under a common law presumption, courts ordinarily construe an indemnification provision of a contract not to protect a party from liability arising from the party's own negligence, unless the contractual provision clearly and unequivocally provides so. When a contractual provision clearly does not allow for indemnification of a party's own negligence, there is no need to resort to the common law presumption and, accordingly, the presumption plays no role in a dispute over indemnification under the contractual provision.


**Indemnification - Burdens of Proof**. In an action to enforce an indemnification provision of a contract, the party seeking indemnification – the indemnitee – has the burden of proving the prerequisites that trigger the indemnification obligation. The party from whom indemnification is sought – the indemnitor – has the burden of proving any affirmative defense. When the contract provides for indemnification of liability arising from the indemnitor's negligence, the indemnitee has the burden of proving the existence of the contract, the negligence of the indemnitor, the resultant liability of the indemnitee, and the failure of the indemnitor to pay indemnification. If the indemnitor asserts that the liability arose instead from the indemnitee's own negligence, the indemnitor has the burden of proving that defense.


**Attorneys' Fees - Award under Contract - Reasonableness - Sufficiency of Evidence.**
An indemnification provision of a contract may include, in the amounts to be paid as indemnification, reasonable attorneys' fees incurred by the indemnitee. In a dispute over indemnification under the contract, a court has broad discretion to determine an award of fees under such a provision. The evidence supporting a fee award was insufficient when the description of legal services performed was completely redacted from the documentation submitted to the court.

Circuit Court for Baltimore County
Case No. 03-C-1-006505 CN
Argued: June 4, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 89

September Term, 2014

_____

BOARD OF TRUSTEES, COMMUNITY COLLEGE OF
BALTIMORE COUNTY

v.

PATIENT FIRST CORPORATION

_____

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: August 18, 2015

*Harrell, J., now retired, participated in the
hearing and conference of the case while an active
member of this Court; after being recalled
pursuant to the Constitution, Article IV, Section
3A, he also participated in the decision and
adoption of this opinion.

In an indemnification provision of a contract, one party agrees to reimburse the other party for a liability, loss, or damage that the other party might incur.[1]  This case concerns the application of an indemnification provision in an agreement between a community college and a medical facility under which student medical technicians gained useful experience doing blood draws at the facility.  The college agreed to indemnify the facility for any liability that the facility might incur (including attorneys' fees) arising from a negligent act or omission of a student.

As a result of an unfortunate incident involving a failed blood draw by a student, the facility paid money to settle a lawsuit and incurred attorneys' fees.  The community college contested its obligation to indemnify the facility for the settlement payment and attorneys' fees, asserting that the liability arose from the facility's own negligence.  After a bench trial, the Circuit Court decided in favor of the facility.

We hold that:  (1)  the medical facility had the burden of proving its entitlement to indemnification – *i.e.*, the existence of the indemnification agreement, negligent conduct of a student at the facility, its payment of money in settlement and for attorneys' fees, and the failure of the college to indemnify it; (2) the college had the burden of proving, as an affirmative defense, that the facility itself was negligent and that the liability arose from that negligence; and (3) the trial court was not clearly erroneous in concluding that the facility bore its burden, but the college did not.  We remand for further consideration of the reasonableness of the attorneys' fee award.

---

[1] *See Pulte Home Corp. v. Parex, Inc.,* 403 Md. 367, 381, 942 A.2d 722 (2008); Black's Law Dictionary (9th ed. 2009) at 837-38.

**I**

**Background**

*The Agreement between CCBC and Patient First*

Among the programs offered by Petitioner Community College of Baltimore County ("CCBC") is training for a Phlebotomy Technician Certification.[2] In connection with that program, CCBC entered into arrangements with local hospitals and medical providers in the Baltimore area to permit its students to obtain clinical experience at those facilities. The terms of the arrangement were incorporated in a written agreement drafted by CCBC entitled "Community College of Baltimore County - Agreement for Clinical Program - Venipuncture" (the "Agreement"). The Agreement was to be executed by representatives of CCBC and the particular facility, referred to in the agreement as the Provider.

The Agreement provided that CCBC and the Provider agreed to establish a "supervised clinical experience for the Venipuncture Students" at the Provider's facilities. It then set forth various "rights and responsibilities" of CCBC and the Provider with respect to the program, the term of the Agreement, and various other general provisions. Pertinent to this case, the Agreement included a section on indemnification, which reads, in pertinent part:

---

[2] "Phlebotomy" is defined as "the act or practice of opening a vein by incision or puncture to remove blood." The American Heritage Dictionary (2008). The related term, "venipuncture," is defined as "puncture of a vein, as for drawing blood, intravenous feeding, or the administration of medicine." *Id.*

2

7.	INDEMNIFICATION

7.1	[CCBC] will defend, indemnify and hold the Provider harmless from any and all losses, claims, liabilities, damages, costs and expenses (including reasonable attorneys' fees) which arise out of the negligent acts or omissions of [CCBC], its agents, employees or Venipuncture Students in connection with this Agreement ....

It is further understood and agreed that [CCBC] is not waiving or relinquishing in any manner any defenses that may be available to [CCBC] including, but not limited to, government sovereign immunity or breach of contract or otherwise, nor is [CCBC] relinquishing any defenses that may become available to it at any time during the term of this Agreement, but that [CCBC] is free to assert all defenses that may be available to it at law or in equity.

7.2	The Provider will defend, indemnify and hold the Program harmless for any and all losses, claims, liabilities, damages, costs and expenses (including reasonable attorneys' fees) which arise out of the negligent acts or omissions of the Provider, its agents or employees in connection with this Agreement or by any breach or default in the performance of the obligations of the Provider.

In September 2003, CCBC entered into the Agreement with Respondent Patient First Corporation ("Patient First").[3] Patient First is a provider of preventative, primary, and urgent care services at medical centers throughout the mid-Atlantic area, including several located in the Baltimore area.

_____

[3] The Agreement identifies the Provider only as "Patient First." There are apparently several related entities that use the phrase "Patient First" in their name and several were named in the underlying lawsuit whose settlement triggered the dispute over indemnification in this case. Patient First Corporation initiated this case and there appears to be no dispute that, if the Provider is entitled to indemnification under the Agreement, Patient First Corporation is the appropriate indemnitee.

*The Blood Draw*

In January 2007, as part of the CCBC program and pursuant to the Agreement between CCBC and Patient First, a CCBC student worked as a student phlebotomist at Patient First's medical center in Perry Hall, Maryland. At the end of her first week at the facility, the CCBC intern attempted to draw blood from Dimitris Politis, a six-year old patient. At the time of the attempted blood draw, the treating physician who had ordered the blood draw had left the examining room and only the child's mother and grandmother were present. The CCBC intern accidentally nicked herself with a needle and then used the same needle to attempt, unsuccessfully, to draw blood from the child. The treating physician, who was also the medical director for the facility, later discovered what had happened and ordered that the CCBC intern be tested for infectious diseases. The CCBC intern subsequently tested positive for Hepatitis C. The child was tested for a year, but did not test positive for Hepatitis C.

*The Politis Negligence Action*

In December 2009, the child's mother, Susan Politis, filed a complaint against Patient First, its affiliates, and the CCBC intern in the Circuit Court for Baltimore County. The complaint consisted of three counts alleging negligence on the part of the CCBC intern and Patient First and sought $5 million in damages as to each count. The specific allegations of negligence largely concerned the actions of the CCBC intern.[4] The complaint also alleged

_____

[4] For example, paragraph 18 of the complaint alleged the following acts and omissions, among others: "failing to safely and competently perform a routine blood draw

(continued...)

4

that the CCBC intern acted as "an actual and/or apparent agent, servant, and employee of" Patient First and that she "was not supervised at the time she negligently attempted a blood draw from the minor Plaintiff." The complaint alleged that the defendants collectively acted negligently in failing to utilize appropriate safeguards or procedures to protect the plaintiffs from injury or contaminated blood.

On January 26, 2010, Patient First's General Counsel sent a letter to CCBC asserting that CCBC was obligated to defend and indemnify Patient First for any liability with respect to the Politis lawsuit pursuant to paragraph 7.1 of the Agreement between CCBC and Patient First. CCBC responded by referring Patient First to CCBC's counsel. CCBC denied that it was obligated to defend or indemnify Patient First. Patient First eventually hired its own outside counsel to defend against the Politis complaint.

The parties in the Politis lawsuit conducted discovery and participated in mediation. On March 16, 2011, they reached a settlement agreement in which the plaintiffs agreed to release the CCBC intern and Patient First from liability in exchange for a payment of $50,000. The insurance that CCBC had obtained to cover its students, including the intern

[4] (...continued) without injury," "failing to use appropriate technique when performing a blood draw," "failing to protect Plaintiffs from injury during the blood draw," "using a contaminated needle to draw blood from the minor Plaintiff after sticking herself with the needle," "using a contaminated needle to perform a blood draw," "exposing the minor Plaintiff to contaminated blood," "exposing the Plaintiff, Susan Politis, to contaminated blood," "trying to conceal the fact that she used a contaminated needle to draw blood from the minor Plaintiff," "failing to notify the appropriate authorities that a contaminated needle was used during a routine blood draw," "exposing the Plaintiff and the minor Plaintiff to bodily fluids," "failing to obtain informed consent," and "failing to inform the Plaintiff that she was infected with Hepatitis C prior to attempting a blood draw from the minor Plaintiff."

placed at Patient First, contributed $40,000 toward the settlement and Patient First contributed $10,000.  The settlement agreement recited that the CCBC intern and Patient First expressly denied all allegations of negligence and that they denied that any conduct on their part caused damage or injury to Ms. Politis or her child.  The settlement agreement also stated that the settlement was not to be construed as an admission of liability on behalf of the CCBC intern or Patient First "at any time for any purpose."

*Patient First's Action to Enforce Indemnification Provision*

In June 2011, Patient First initiated this action for breach of contract in the Circuit Court for Baltimore County, alleging that CCBC had failed to comply with the terms of their Agreement by failing to indemnify Patient First for (1) the $10,000 that Patient First had paid toward the settlement of the Politis lawsuit and (2) attorneys' fees and costs in the amount of $78,937.39[5] related to the defense of that lawsuit.  In its answer, CCBC generally denied liability for breach of contract and asserted a number of defenses, including that the Agreement did not obligate it to indemnify Patient First for Patient First's own negligence.

At the conclusion of a two-day bench trial in April 2013,[6] the Circuit Court ruled from the bench that Patient First was entitled to indemnification.  The court reasoned that, in light of the mutual indemnification provisions in the Agreement, resolution depended not on the

---

[5] Patient First later corrected this figure to indicate that it was seeking $77,097.08 with respect to attorneys' fees.

[6] The testimony at the trial is described in some detail in the opinion of the Court of Special Appeals in this case.  219 Md. App. 69, 76-81, 98 A.3d 1072 (2014).

allegations in the Politis complaint, but on "where liability rests." The court found that negligence on the part of the CCBC intern had been established, but that there was insufficient evidence to show negligence on the part of Patient First – what the court referred to as an "independent breach" of a duty. The court awarded Patient First $87,097.08 in damages, which included the $10,000 that Patient First contributed to the Politis settlement and attorneys' fees and costs accrued in defending the Politis law suit.[7] A written judgment reflecting the oral ruling followed.

CCBC appealed. The Court of Special Appeals affirmed the judgment of the Circuit Court. 219 Md. App. 69, 98 A.3d 1072 (2014). We granted CCBC's petition for a writ of *certiorari* to consider (1) whether the Circuit Court made an error of law when it ruled in favor of Patient First in the breach of contract action; and (2) whether the Circuit Court abused its discretion in allowing Patient First's General Counsel to testify as to the reasonableness of the attorneys' fees it had paid to defend the Politis lawsuit and erred in relying on that testimony to make the fee award.

## II

### Indemnification

CCBC argues that the Circuit Court and the Court of Special Appeals improperly ignored the common law presumption that a party seeking indemnification cannot recover for liability resulting from the party's own negligence. Patient First argues that, before

---

[7] The Circuit Court declined to order CCBC to pay Patient First's attorneys' fees attributable to this action. See note 17 below.

CCBC can rely on the presumption, there must be a determination that Patient First was negligent and CCBC bears the burden of proving that Patient First's liability arose from its own negligence. CCBC disagrees that it bears the burden of proof and argues that Patient First, as the plaintiff, must prove that its own actions were not negligent. In sum, CCBC argues that a misplaced burden of proof and un-used presumption caused the Circuit Court to reach an erroneous factual conclusion as to Patient First's entitlement to indemnification.

To untangle these issues, it is useful to answer four questions:

1 - Does the common law presumption apply to this case?

2 - What liability is covered by the indemnification provision?

3 - As a legal matter, did the Circuit Court correctly allocate the burdens of proof?

4 - Was the Circuit Court clearly erroneous in its findings as to negligence?

## A.    *Whether the Presumption Applies Here*

CCBC argues that the trial court erred as a matter of law by failing to apply the presumption that an indemnitee cannot recover for its own negligence. However, there is no need to resort to that presumption in this case because the indemnification clause itself clearly negates any suggestion that it requires CCBC to indemnify Patient First for liability arising out of Patient First's own negligence.

*The Presumption Against Indemnification for One's Own Negligence*

There is a common law presumption that an indemnification agreement ordinarily does not cover liability resulting from the indemnitee's own negligence. Applying that presumption, a court will not interpret an indemnification clause "to indemnify a person

8

against his own negligence unless an intention so to do is expressed in those very words or in other unequivocal terms." *Crockett v. Crothers*, 264 Md. 222, 227, 285 A.2d 612 (1972); *see also Farrell Lines, Inc. v. Devlin*, 211 Md. 404, 421, 127 A.2d 640 (1956). That presumption may be overcome when an indemnification clause of a contract expressly permits a party to recover for liability arising from the party's own negligence. *Mass Transit Admin. v. CSX Transp., Inc.*, 349 Md. 299, 310, 708 A.2d 298 (1998) (contract's indemnification clause expressed in "unequivocal terms" the intent to indemnify a party for its own negligence); *Kreter v. HealthSTAR Communications, Inc.*, 172 Md. App. 243, 914 A.2d 168 (2007) (concluding that the presumption did not apply because it would belie the parties' actual intent).

*Construing the Indemnification Clause in this Case*

As with any contract clause, a court construes language of an indemnification provision in accordance with its customary, ordinary, and accepted meaning. *See Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 300-1, 844 A.2d 460 (2004). The construction of the pertinent paragraphs of the Agreement is straightforward.

Paragraph 7.1 of the Agreement provides that CCBC will indemnify Patient First for "any and all losses, claims, liabilities, damages, costs and expenses ... which arise out of the negligent acts or omissions of ... Venipuncture Students ...." It is thus clear that CCBC has agreed to indemnify Patient First for liability Patient First may incur as a result of the negligence of a student like the one involved in the Politis incident. But there is no clear or unequivocal expression that CCBC has agreed to indemnify for the indemnitee's own

9

negligence – Paragraph 7.1 does *not* say that CCBC will indemnify Patient First for liability arising out of negligent acts or omissions of Patient First itself in the operation of venipuncture program.

If there was any doubt on the latter score, it is quickly eliminated by reference to the next paragraph of the Agreement. Paragraph 7.2 provides that Patient First will indemnify CCBC for "any and all losses, claims, liabilities, damages, costs and expenses ... which arise out of the negligent acts or omissions of ..." Patient First or its agents or employees. This paragraph negates any notion that CCBC would be required to indemnify Patient First under paragraph 7.1 for Patient First's own negligence. If CCBC were required under paragraph 7.1 to indemnify Patient First for its own negligence, that would be a loss arising out of the negligent acts of Patient First, for which CCBC would in turn be entitled to indemnification *from Patient First* under paragraph 7.2. Thus, it is clear that CCBC is not to incur liability – or pay indemnification for liability – for actions arising from Patient First's own negligence.

In sum, the Agreement is clear on its face that Patient First would not be entitled to indemnification for its own negligence. The common law presumption, which is simply an aid to construction, is not needed here.

**B.**   ***Identifying the Type of Liability Covered by Paragraph 7.1***

It is useful to consider, more concretely, the type of tort liability subject to indemnification by CCBC under paragraph 7.1 and distinguish it from tort liability that is not covered. A provider like Patient First might be held liable for negligent actions of those who

10

work for it under a theory of *respondeat superior*. Under that doctrine, an entity may be held vicariously liable for the negligent acts or omissions of its employees or agents, acting within the scope of their employment or agency, even if the entity itself is without fault. *Southern Management Corp. v. Taha*, 378 Md. 461, 480-81, 836 A.2d 627 (2003).[8]

Under the doctrine of *respondeat superior*, there would be no need for a tort plaintiff to prove that a provider like Patient First itself was negligent in order for Patient First to be held liable for the negligence of a student intern participating in the venipuncture program. In such a case, CCBC would be obligated to indemnify Patient First under paragraph 7.1 because Patient First's liability arose "out of the negligent acts or omissions of a Venipuncture Student."

In contrast, one might imagine a situation in which a medical facility where a student was working had failed to maintain its equipment properly and a patient suffered an injury as a result. The resulting tort action seeking compensation for that injury would likely focus

---

[8] In *Taha*, the Court described the doctrine of *respondeat superior* as follows:

> Litigants may invoke the doctrine of respondeat superior as a means of holding an employer, corporate or otherwise, vicariously liable for the tortious conduct of an employee, where it has been shown that the employee was acting within the scope of the employment relationship at that time. On a successful claim under the doctrine of respondeat superior, an employer will be held jointly and severally liable for the tortious acts committed by its employee. For an employee's tortious acts to be considered within the scope of employment, the acts must have been in furtherance of the employer's business and authorized by the employer.

378 Md. at 480-81 (citations omitted).

11

on the facility's negligent maintenance of its equipment and not on a theory of *respondeat superior* based on the actions of the student, although the student might also be named as a defendant in the tort action. In such a case, the provider would not be entitled to indemnification from CCBC for its liability because the liability did not arise out of an act or omission of the student. Indeed, if CCBC incurred some liability as a result of the incident, it would be entitled to indemnification from the provider under paragraph 7.2 of the Agreement.[9]

In theory, then, it is clear what type of tort liability is subject to the indemnification provision and what type is not. In practice, things are never so easy. The allocation of the burden of proof becomes important in determining, in the Circuit Court's words, "where liability rests."

## C. *Whether the Circuit Court Correctly Allocated the Burdens of Proof*

In its answer to the complaint in this case, CCBC asserted as a defense that the liability for which Patient First was seeking indemnification arose out of Patient First's own

---

[9] The Circuit Court itself noted the different results in such contrasting scenarios:

> [I]f ... [the CCBC intern] with someone standing right over her carefully observing ... did a stick in a way that caused an injury ... the College has agreed to indemnify Patient First for whatever claims arise out of that....

> If you take the flip of it and ... the provider does something that's negligent that causes an injury and there's a claim ... something defective in the workplace ... and everyone gets sued including ... the poor little student ... the provider is agreeing to indemnify the college.

12

negligence. At trial it identified that negligence as Patient First's alleged failure to adequately supervise the CCBC intern and argued that Patient First was required to demonstrate that it was not negligent to qualify for indemnification. In analyzing the evidence presented to it, the Circuit Court allocated the burden of proof on that issue to CCBC and ultimately concluded that CCBC did not meet that burden.

On appeal, CCBC reiterates its contention that the burden of proof should have been placed on Patient First to prove that it was not negligent in order to make out its claim for indemnification.

*Burdens of Proof*

"In Maryland, as in the majority of states, it is the rule, in either breach of contract or tort cases, that the burden of proof is on the plaintiff, or on the party who asserts the affirmative of an issue, and that burden never shifts." *Kruvant v. Dickerman*, 18 Md. App. 1, 3, 305 A.2d 227 (1973); *Operations Research, Inc. v. Davidson & Talbird, Inc.*, 241 Md. 550, 574, 217 A.2d 375 (1966) ("The burden of proof rests on the party who has the affirmative of the issue"); *Burgess v. Lloyd*, 7 Md. 178, 197 (1854) (noting the "general rule, that he who holds the affirmative must prove it"). The phrase "burden of proof" encompasses two distinct burdens: the burden of production and the burden of persuasion. *Commodities Reserve, Corp. v. Belt's*, 310 Md. 365, 368 n.2, 529 A.2d 822 (1987) (quoting C. McCormick, *McCormick on Evidence* § 336, at 947 (3d ed. 1984)). The party that bears the burden of production must produce sufficient evidence on an issue to present a triable issue of fact and avoid a directed verdict. L. McLain, 5 Maryland Evidence, § 300:6. The

burden of production is "usually cast first upon the party who has pleaded the existence of the fact ... but may shift to the adversary when the pleader has discharged its initial duty." 2 McCormick on Evidence, §336 (7th ed., Kenneth S. Broun, ed.).

The burden of persuasion comes into play only after the parties have sustained their burdens of production and then only if the fact finder finds the evidence supporting each party of equal weight. *Commodities Reserve*, 310 Md. at 371; *Kassap v. Seitz*, 315 Md. 155, 170-71, 553 A.2d 714 (1989). In that case, the fact finder must find against the party bearing the burden of persuasion. *Kassap*, 315 Md. at 170-71; 5 Maryland Evidence §300:4 (noting the burden of persuasion is also termed "the risk of nonpersuasion, because if two possible conclusions can be inferred from the evidence adduced and neither can be said to have been proved, the judgment must go against the party on whom the burden rests"). Unlike the burden of production, the burden of persuasion never shifts from one party to another during the course of a trial. *Operations Research*, 241 Md. at 574.

A plaintiff initially bears both the burden of production and the burden of persuasion as to its claims. The burden of production may shift to the defendant, who can either do nothing or present evidence to disprove the plaintiff's allegations.[10] A defendant does not assume the burden of persuasion merely by presenting a defense. An exception is when a defendant asserts an affirmative defense. When a defendant asserts an affirmative defense,

---

[10] The defendant can choose not to put on any evidence, in which case the court must determine whether the plaintiff submitted sufficient evidence to present a triable question of fact, and the trier of fact will be required to accept or reject the plaintiff's evidence. *Commodities Reserve*, 310 Md. at 371.

14

the defendant has taken the affirmative of an issue and therefore assumes the burden of production and the burden of persuasion as to the elements of that defense. *Crowther v. Hirschmann*, 174 Md. 100, 197 A. 868 (1938) ("it is equally well settled that when the defendant sets up an affirmative defense, he is required to offer legally sufficient evidence of the fact upon which he relies").

*Allocating the Burden of Proof on Claims of Negligence*

A party alleging negligence initially bears the burden of production and persuasion that the other party was negligent. *See, e.g.*, *Schultz v. Bank of Am., N.A.*, 413 Md. 15, 27, 990 A.2d 1078 (2010) (noting the elements a plaintiff must prove in order to establish negligence); *Suburban Hosp. Ass'n v. Mewhinney,* 230 Md. 480, 485, 187 A.2d 671 (1963) (reversing judgment because plaintiff failed to present sufficient evidence to prove negligence). In other words, a party is presumed to have acted with due skill and care and a party alleging otherwise bears the burden of overcoming that presumption. *See Schultz*, 413 Md. at 28-29 (plaintiff alleging negligence of a professional bears the burden of overcoming the presumption that due skill and care were used); *John Hancock Mut. Life Ins. Co. of Boston v. Plummer*, 181 Md. 140, 144, 28 A.2d 856 (1942) (a court will presume that a professional, such as a dentist or physician, has performed his work carefully and skillfully in the absence of proof to the contrary).

Consistent with this principle, a defendant alleging contributory negligence by a plaintiff bears the burden of proof on that issue. In such a case, "[t]here is no burden on the plaintiff to free himself from the charge of contributory negligence." *Sheriff Motor Co. v.*

15

*State, for Use of Parker*, 169 Md. 79, 179 A. 508 (1935); *see also Sergeant Co. v. Pickett*, 285 Md. 186, 203, 401 A.2d 651 (1979) (defendant in a contract dispute alleging that the plaintiff failed to use ordinary care in mitigating damages bears the burden of proof on that issue).

*Burdens of Proof in an Action to Enforce Indemnification Agreement*

Patient First, as the plaintiff in this action to enforce the indemnification agreement, had the burden to prove that CCBC owed it a contractual duty and that CCBC breached that duty. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645 (2001). Specifically, in order to establish a breach of the contract, Patient First had the burden to prove that it incurred liability arising out of a negligent act or omission of a venipuncture student and that CCBC had not reimbursed it for that liability.

CCBC argues that Patient First also had the initial burden to demonstrate that the liability did not arise from its own negligence. This would seemingly create a presumption that a party seeking indemnification was negligent, unless and until it proves that it was not. CCBC's argument is inconsistent with how this Court has consistently applied the burden of proof in negligence cases.[11]

_____

[11] CCBC asserts that, in *Crockett v. Crothers*, 264 Md. 222, 285 A.2d 612 (1972), this Court placed the burden on the party seeking indemnification to prove that it was not negligent. CCBC misreads *Crockett*. In that case, there was a jury trial at which plaintiff homeowners (equivalent to Ms. Politis here) had the burden of proving that both a contractor (equivalent to CCBC here) and an engineer (equivalent to Patient First here) were negligent. The jury found that both defendants were negligent. When the engineer later sought indemnification from the contractor, the court ruled against the engineer because the engineer had been found negligent in the jury trial. The court did not place the burden on the party
(continued...)

16

CCBC has presented no convincing reason why the allocation of the burdens of proof should be reversed. CCBC admits Patient First's basic factual premise – that the contract provides for indemnification of Patient First for liability arising out of the negligence of venipuncture students and that the CCBC intern was negligent – but argues that Patient First is nevertheless barred from recovering indemnification because Patient First was *also* negligent and that its payment to settle the Politis litigation arose out of that negligence, instead of the negligence of the CCBC intern.

In our view, this should be treated as an affirmative defense. *See Kruvant*, 18 Md. App. 1 ("An affirmative defense is one which directly or implicitly concedes the basic position of the opposing party, but which asserts that ... the opponent is not entitled to prevail because he is precluded for some other reason.") (citation omitted). The Circuit Court correctly allocated the burden of proof to CCBC (the indemnitor), to prove that the liability incurred by Patient First itself arose out of Patient First's (the indemnitee's) own negligence.[12]

---

[11] (...continued)
seeking indemnification to show that it was not negligent; it merely accepted the jury verdict in the underlying case – in which the adverse party bore the burden of proving negligence – that the liability for which the party was then seeking indemnification was attributable to its own negligence. Indeed, this Court noted that, when a party alleges negligence by a professional, there is a presumption that a professional used due care – a presumption that places the burden on the party alleging negligence. 264 Md. at 224. Unlike *Crockett*, there was no prior adjudication of fault in this case.

[12] Courts in other jurisdictions have reached similar conclusions. *See, e.g., North Little Rock Electric Co. v. Pickens-Bond Construction Co.*, 485 S.W.2d 197 (Ark. 1972) (indemnitor that relied on common law presumption against indemnification of a party's own

(continued...)

***D.*** ***Whether the Circuit Court's Findings as to Negligence are Clearly Erroneous***

CCBC contends that, even if the burden of proof was properly placed on it to establish Patient First's negligence as an affirmative defense, it met that burden. It thus disputes the Circuit Court's determination of that issue. When reviewing the results of a bench trial, as in this case, an appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Maryland Rule 8-131(c).

*Whether the Allegations of the Politis Complaint Control*

CCBC argues that the allegations in the Politis complaint are sufficient to establish that Patient First acted negligently. As noted above, that complaint named both Patient First and the CCBC intern as defendants. The complaint asserted, somewhat cryptically, at least

---

[12] (...continued)
negligence had burden of proof that indemnitee was negligent); *Zebrowski v. City of Indianapolis*, 457 N.E.2d 259, 262-63 (Ind. Ct. App. 1983) (agreeing with *North Little Rock Electric* that an indemnitor under an indemnification agreement has the burden to prove an exception to its contractual obligation); *Grubb & Ellis Mgmt. v. 407147 B.C., LLC*, 138 P.3d 1210, 1215 (Ariz. App. 2006) (although party seeking to be indemnified generally has burden of proof as to entitlement, indemnitor's contention that the indemnitee's own negligence rendered it ineligible was "in the nature of an affirmative defense" on which indemnitor bore the burden of proof); *Tesoro Petro. Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 125-26 (Tex. App. 2002) (when indemnitee and indemnitor had both contributed to a settlement without admitting fault, in subsequent action to enforce indemnification provision the indemnitor had the burden of proving as an affirmative defense that a contractual exclusion for the indemnitee's gross negligence applied and that indemnitee was in fact grossly negligent); *Lloyd v. Jones Stevedoring Co.,* 490 F.2d 648 (9th Cir. 1973) (with respect to a contractual provision in which a stevedore company agreed to indemnify a vessel for claims "arising out of the work" of the stevedore company, the indemnitor stevedore company bore the burden of proving as an affirmative defense that the vessel was negligent and therefore not entitled to indemnification under that provision).

18

two theories of liability with respect to Patient First: (1) that Patient First was liable because the CCBC intern acted as "an actual and/or apparent agent, servant, and employee" of Patient First – liability based on a theory of *respondeat superior* and (2) that Patient First was liable because the CCBC intern was unsupervised at the time of the incident and because both defendants failed to use "appropriate safeguards or procedures" – allegations that appear to allege some independent negligence on the part of Patient First.

No trial was held in the Politis case that would have resolved whether Patient First itself was negligent or whether any liability it incurred would be solely as a result of the actions of the CCBC intern under a theory of *respondeat superior* or on the basis of some independent negligent act or omission.[13] Although Patient First settled the case, it specifically denied fault in the settlement agreement – as did the CCBC intern.

In our view, neither the obligation to indemnify – nor the affirmative defense that the liability was attributable to the negligence of the party seeking indemnification – are established by the unproven allegations of a complaint.[14] Accordingly, the trial of this action

---

[13] Even if the case had gone to trial and Patient First had been found liable, a jury verdict may not have clearly indicated the jury's finding on its view of the facility's liability in the absence of targeted questions on a verdict form.

[14] CCBC relies on a statement in *Max's of Camden Yards v. A.C. Beverage*, 172 Md. App. 139, 153, 913 A.2d 654 (2006) that "[t]here is support for the proposition that the nature of each party's negligence, active versus passive, is determined based on the pleadings by the tort plaintiff." This quotation must be understood in context. *Max's* concerned a claim for implied indemnity by one joint tortfeasor against another tortfeasor under a principle that "if more than one tortfeasor is found liable to a plaintiff, and one of them is found to be passively negligent, the passively negligent tortfeasor has a right of implied indemnity against an actively negligent tortfeasor." 179 Md. App. at 143. The underlying
(continued...)

was necessary to determine whether the parties met their respective burdens.

*Trial - Patient First's Claim*

In order to meet its burden of proof, Patient First presented the testimony of the treating physician at its Perry Hall facility, its director of training, and its General Counsel. The treating physician, who also happened to be the medical director of the facility, related the facts of the failed blood draw as recounted to her by the CCBC intern and Ms. Politis. While CCBC cross-examined the physician to suggest that she had failed to properly supervise the CCBC intern, it was essentially uncontested that the CCBC intern was negligent in attempting to draw blood from the child with the same needle with which she had stuck herself. The director of training introduced the indemnification agreement. Patient

---

[14] (...continued) case had been settled by one of the defendants without a trial. The other defendant (Max's) sought indemnification for its attorneys' fees from the settling defendant on a theory of implied indemnity and argued that it was only passively negligent.

The Court of Special Appeals affirmed the trial court's dismissal of the action, stating that it was unlikely that a party would be entitled under Maryland law to reimbursement of attorneys' fees under a theory of implied indemnity and that, even assuming that attorneys' fees were recoverable under that theory, the underlying complaint alleged that Max's was primarily negligent. The court was reluctant to remand for a trial of "artificial issues in a setting in which it would be difficult to duplicate the trial" in light of the tort plaintiff's settlement of the underlying action. *Id*. at 156. The court's holding appeared to be based to some extent on the idea that, if the tort plaintiff had prevailed at trial and Max's had been found primarily liable, Max's would not have been entitled to indemnification; on the other hand, if Max's had prevailed at a trial, it would not have been a joint tortfeasor entitled to implied indemnity. In any event, the Court of Special Appeals expressly cautioned that it was not answering the question generally whether the right to implied indemnity should be based on the tort plaintiff's allegations or on facts as found after a trial and that it was confining its holding "to the facts of this case." *Id*. at 144. *Max's* is not persuasive precedent for relying solely on the allegations of the Politis complaint in this case.

20

First's General Counsel testified that Patient First was sued as a result of the CCBC intern's negligent actions. He testified that CCBC refused Patient First's request that it defend and indemnify Patient First and that Patient First was required to defend the Politis lawsuit for 15 months, including discovery, mediation, and settlement. He further testified that Patient First agreed to contribute $10,000 in order to settle all the allegations of negligence alleged against Patient First in the Politis complaint and had incurred attorneys' fees.

There was no dispute that the CCBC intern was negligent, that in her capacity as a student intern she was Patient First's agent with respect to the Politis child, and that she was acting within the scope of her employment or agency at the time of the incident. There was more than sufficient evidence for the Circuit Court to conclude that Patient First had carried its burden of proving that there was an agreement for indemnification, that Patient First was subject to tort liability under a *respondeat superior* theory, and that it incurred monetary liability and attorneys' fees as a result.

*Trial - CCBC's Affirmative Defense*

CCBC contended that Patient First's potential liability – and therefore the $10,000 it had contributed to the settlement – was more related to Patient First's own negligence in allegedly failing to supervise the CCBC intern adequately. CCBC attempted to establish at trial that Patient First was negligent in two respects: (1) allowing a venipuncture student to draw blood from child under the age of 10; and (2) failing to provide adequate supervision of a venipuncture student during a blood draw.

21

It was undisputed that nothing in the Agreement or any other document set forth requirements for supervision of the student phlebotomists.[15] Several CCBC officials testified, including the coordinator of the college's phlebotomy program at the time of the incident and one of its faculty members. They described their understanding of "supervised clinical experience" – the phrase used in the Agreement – that students would have while placed at a facility like Patient First. According to the coordinator of the program, it contemplated a progression under which a student would first shadow facility staff, then do blood draws with direct supervision, and then work independently. While he did not expect that Patient First staff would directly observe every "needle stick" by a student, he believed that students would either not do "hard sticks" (*i.e.*, young children, elderly, or obese patients) or would be directly supervised when doing so. He said that, because of the physical layout of Patient First facilities – where examining rooms were in close proximity to one another – it was not anticipated that a supervisor would always be in a room with a student. The faculty member testified that, while he himself had never allowed a student to draw blood from a six-year old child, he had not instructed his students to refrain from drawing blood from young children.

CCBC also noted that Patient First had admitted that, on the day of the incident, the CCBC intern was under the general supervision of the treating physician (who was also the

---

[15] In its answers to Patient First's discovery requests, CCBC admitted that Patient First was not obligated to observe every "needle stick" and had not represented that it would. According to CCBC, the facility was obligated to determine the appropriate level of supervision, depending on the particular patient.

22

medical director of the facility) and that the physician testified that she was unaware that a student was doing the blood draw for the Politis child. Finally, CCBC noted that Patient First's General Counsel stated on cross-examination that Patient First had contributed $10,000 to the settlement of the Politis case to settle allegations of negligence against Patient First. CCBC asserted that this testimony was an admission by Patient First that the funds for which its sought indemnification related to liability for its own negligence.

In its oral ruling at the conclusion of the trial, the Circuit Court observed that the Agreement itself "was very non-specific about what the supervised clinic was supposed to be," that the testimony revealed different understandings of the extent of supervision, and that it was difficult for the court to "figure out what is the standard of care ... and whether it was breached." The court noted that "it's not something that's apparent on its face and it's not something, even looking at the people who testified in front of me who have experience in this field there were differences of opinion ...." In the absence of expert testimony establishing the standard of care for supervision of a student phlebotomist, the court stated that it was left with "a question mark as to whether the evidence is sufficient to show a breach by Patient First" of a duty of care. Accordingly, the court found that CCBC had failed to carry its burden of proof as to its affirmative defense.

In our view, the Circuit Court's assessment of the evidence concerning CCBC's affirmative defense is not clearly erroneous. The Circuit Court's finding on this issue was based primarily on the absence of evidence of the standard of care. As with any negligence claim, a party alleging negligence must prove the existence of a legal duty, a violation of that

23

duty, and that the violation proximately caused the injury for which damages are sought. *Schultz v. Bank of America*, 413 Md. 15, 27, 990 A.2d 1078 (2010). The duty owed by a medical professional is to exercise the degree of care or skill expected of a reasonably competent health care provider in the same or similar circumstances. *Shilkret v. Annapolis Emergency Hosp. Ass'n*, 276 Md. 187, 200, 349 A.2d 245 (1975). "When the plaintiff alleges negligence by a professional, expert testimony is generally necessary to establish the requisite standard of care owed by the professional." *Schultz*, 413 Md. at 28; *see also Rodriguez v. Clarke*, 400 Md. 39, 71, 926 A.2d 736 (2007) (noting the nature and scope of the particular duty must generally be defined by expert testimony). "This is because professional standards are often beyond the ken of the average layman[.]" *Schultz*, 413 Md. at 28 (citations and internal quotation marks omitted).

As the Circuit Court indicated, while the testimony provided various views on how a student should be supervised, nothing established the standard of supervision for a facility like Patient First or specifically for a facility that participated in the clinical venipuncture program. In the absence of a reference point as to how a reasonable medical provider would perform in this situation, the Circuit Court was understandably reluctant to find that Patient First acted negligently in allowing the CCBC intern to attempt the blood draw without a Patient First employee in the room. Without evidence of contours of the duty to supervise, it was not clearly erroneous for the court to find that CCBC failed to satisfy its burden of proof. *See Jones v. State*, 425 Md. 1, 19, 38 A.3d 333 (2012) ("there can be no negligence where there is no duty").

24

Nor was the testimony of Patient First's General Counsel an admission that relieved CCBC of the need to prove Patient First's negligence. The General Counsel admitted that the $10,000 payment was made to settle "*allegations*" of negligence. Moreover, settlement agreements are not evidence or admissions of fault. *See* Maryland Rule 5-408 (the fact that a party furnished valuable consideration for the purpose of compromising a claim is not admissible to prove the validity of a civil claim in dispute).

In sum, the Circuit Court was not clearly erroneous in finding that CCBC failed to present sufficient evidence establishing the scope and nature of Patient First's duty with regard to the supervision of the CCBC intern. Without establishing the duty of care, CCBC failed to satisfy its burden as to Patient First's negligence.[16]

## III

### Attorneys' Fees

Under paragraph 7.1 of the Agreement, Patient First was entitled to recover "reasonable attorneys' fees" from CCBC as part of the indemnification. To prove this aspect of its damages, Patient First introduced, during the testimony of its General Counsel, a 20-page "detailed transaction" report from the law firm that represented it in the Politis

---

[16] If the Circuit Court had found that Patient First was negligent, an interesting question is whether, and how, the liability should be apportioned, in the absence of a trial and special jury verdict, between liability based on *respondeat superior* (subject to indemnification) and liability on the basis of the provider's own negligence (not subject to indemnification). *Cf. Perdue Farms, Inc. v. Travelers Casualty and Surety Co.*, 448 F.3d 252, 263-64 (4th Cir. 2006) (apportioning total settlement amounts between claims for which insurer was obligated to indemnify liability and claims not subject to indemnification). Such a case might also raise issues of contribution and implied indemnity, but that question is beyond the scope of this opinion.

litigation. The report detailed the amounts billed to Patient First by the law firm. Eighteen of the 20 pages of the law firm's report appear to list specific work performed and the amounts billed for that work. Each listed item is comprised of a date, initials (presumably identifying the attorney in the firm who did the work), a rate (presumably dollars per hour), a number of hours, and an "amount" (apparently the product of the number of hours times the rate). The last column for each item, which apparently described the work performed with respect to each of those charges, was redacted in the exhibit admitted at trial. The penultimate page of the report summarizes "write-offs." The final page is a summary that lists various expenses, the amounts billed in several invoices, and the $10,000 that Patient First contributed to the Politis settlement. All of those amounts together total $87,097.08. Nothing in the report, as redacted, describes what work was done by the firm. The General Counsel testified that Patient First had paid the amounts summarized in that report and that, based on his experience, the fees billed were reasonable "for a lawsuit that proceeds through depositions, a mediation, and to a settlement."

In its oral ruling at the conclusion of the trial, the Circuit Court awarded the full amount listed in the report, but did not elaborate on how it reached that result.[17]

---

[17] The Circuit Court did explain why it was denying other fees requested by Patient First. Patient First had argued that the attorneys' fees provision in paragraph 7.1 also entitled it to recover reasonable attorneys' fees expended in an action to enforce the indemnification provision – *i.e.*, the attorneys' fees it incurred in prosecuting this action. The Circuit Court declined to award those fees, stating that the "American rule," under which each party is responsible for its own costs, would apply unless a contractual or statutory provision clearly shifted the fees. The court held that paragraph 7.1 was not clear and unambiguous in shifting Patient First's fees for this action to CCBC. Patient First has not appealed that determination and we do not address it.

26

CCBC argues that the trial court abused its discretion in finding that the requested fees were reasonable based on the "scant and conclusory" testimony of the General Counsel. As an initial matter, Patient First asserts that CCBC did not preserve the issue of the reasonableness of the attorneys' fee award for review. Patient First argues that CCBC preserved only an evidentiary objection – CCBC's contention that the General Counsel should have been qualified as an expert in order to testify as to the reasonableness of the fees.[18] Patient First asserts that CCBC did not preserve a general objection to the reasonableness of the fees.

*A.      Whether CCBC Preserved the Issue of the Reasonableness of the Fees*

Under Maryland Rule 8-131(a), an appellate court ordinarily will only consider an issue if "it plainly appears by the record to have been raised in or decided by the trial court." Although much of the discussion at trial, and one of CCBC's arguments before the Court of Special Appeals, concerned the admissibility of the evidence submitted concerning the attorneys' fees, it appears clear from the record that CCBC has consistently challenged the sufficiency of that evidence and that the Circuit Court ruled against CCBC on that question.

At trial, CCBC objected to admission of the redacted law firm report on two grounds: (1) the document was provided after discovery ended and (2) the absence of testimony from the law firm indicating that the services provided were necessary and that the charges were

---

[18] As detailed below, CCBC did object at trial to the General Counsel's testimony about the reasonableness of the fees on the ground that he had not been qualified as an expert and included that issue in its appeal. Before this Court, CCBC stated that it is no longer contesting that ruling and we do not address whether it was necessary to qualify the General Counsel as an expert.

27

fair and reasonable.[19]  Most of the discussion between the court and counsel then focused on

the alleged discovery violation, which the trial court overruled on the ground that CCBC had

had the report for months before trial and any complaint concerning discovery compliance

should have been raised during that time.  The court also ruled that the document could be

admitted through the testimony of Patient First's General Counsel without testimony from

the law firm itself.  The Circuit Court reasoned that this objection went to the sufficiency of

Patient First's proof, not the admissibility of the redacted report.[20]

    After testifying that Patient First had been billed, and had paid, the fees listed in the

---

[19] Specifically, with regards to the billing report, the attorney for CCBC stated:

[CCBC Counsel]:    Objection to the substance.  I'm going to object to the document. No. 1, it wasn't supplied in discovery the way it should have been.  I never had an opportunity to depose these folks.  No. 2, there's no testimony by anyone from that firm that these were services that were necessary and that the charges were fair and reasonable.

[20] The transcript reveals the following discussion:

[CCBC Counsel]:    But as to the, the issue of necessity and fairness and reasonableness.

The Court:    But that's not an objection to this exhibit.  That's an objection to whether or not they get, they've proven their fees.

[CCBC Counsel]:    I think they need to have somebody to be able to even get the document in.

The Court:    I mean he can produce, he's testified that this was the bill they sent.  And I'm assuming I'll get other testimony that they paid it.  Whether that's sufficient to meet the burden of proving their damages is a whole different argument.

28

redacted report, the General Counsel was asked by Patient First's counsel whether the fees were reasonable in his experience. There followed a series of objections by CCBC. CCBC objected to the admission of the opinion of the General Counsel on the ground that the General Counsel had neither been identified as an expert in discovery nor qualified as an expert at trial, in addition to the fact that the General Counsel functioned as the plaintiff's representative at trial. Although the court at one point suggested that expert testimony might be required on the issue of reasonableness, it also expressed the view that the General Counsel, as the person who had approved payment of the law firm's bills, could express an opinion on their reasonableness. The discussion then focused on the alleged discovery violation, and the court again overruled CCBC's objections.

During closing argument at trial, CCBC once again raised two issues with regard to the General Counsel's testimony: whether the General Counsel should have been qualified as an expert and whether his testimony as a lay witness, coupled with the redacted billing statements, was sufficient to support the attorneys' fee award sought by Patient First.[21] It is

---

[21] CCBC's attorney stated:

> On top of that, with respect to the attorney's fees for the Politis lawsuit, there was nothing from [the General Counsel] other than the statement that they were reasonable. Other than that, all we are left with is a pile of paper which is very difficult to understand ... there's a failure on the part of the plaintiff to prove their damages with respect to the attorney's fees.... And then so the testimony by [the General Counsel] was cursory, self-serving and insufficient to establish that the charges were necessary and fair and reasonable and, therefore, the plaintiff failed to carry its burden of proof with respect to its claim for those damages.

29

evident that CCBC not only objected to the admissibility of the General Counsel's testimony and the redacted fees report, but also asserted that the evidence was insufficient to establish the reasonableness of the fees.

CCBC has maintained those positions on appeal. In its brief to the Court of Special Appeals, CCBC argued that the trial court abused its discretion in awarding attorneys' fees for two reasons: (1) the failure to qualify the General Counsel as an expert and (2) the insufficiency of that testimony to support the attorneys' fee award.

In its petition for certiorari to this Court, CCBC included the following question:

> Whether the Circuit Court abused its discretion in allowing Patient First's general counsel to testify to the reasonableness of the Hancock Firm fee's and *clearly erred in awarding attorneys' fees based on that testimony.*

(emphasis added). In its brief before this Court, CCBC included the same two arguments raised before the Court of Special Appeals; howevr, it has now dropped its contention that the General Counsel should have been qualified as an expert in order to testify as to the reasonableness of the fees.

Thus, while CCBC objected to the testimony of the General Counsel on the ground that he was not qualified as an expert, it has also consistently made the argument and preserved for our review whether that testimony – and the exhibit admitted pursuant to it – was sufficient as a matter of law to demonstrate that the fees were reasonable.

***B.*** ***Whether There was Sufficient Evidence to Assess the Reasonableness of the Fees***

*Claims for an Attorneys' Fee Award Pursuant to Contract*

In a case involving claims for attorneys' fees and expenses as part of the contractually agreed upon damages for a breach of contract, the party asserting entitlement to the fees bears the burden of showing that the fees requested are "necessary and reasonable." *Diamond Point Plaza Ltd. Partnership v. Wells Fargo Bank, N.A.*, 400 Md. 718, 757, 929 A.2d 932 (2007).  This Court has indicated that relevant factors, among others, that may be considered are those set forth in Rule 1.5 of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").  *Id.* at 757-58.  Those factors are:

(1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3)    the fee customarily charged in the locality for similar legal services;

(4)    the amount involved and the results obtained;

(5)    the time limitations imposed by the client or by the circumstances;

(6)    the nature and length of the professional relationship with the client;

(7)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)    whether the fee is fixed or contingent.

31

MLRPC 1.5(a).  A court need not comment or make explicit findings as to each factor.

*Monmouth Meadows Homeowners Ass'n v. Hamilton*, 416 Md. 325, 336-40 & nn.11-13, 7

A.3d 1 (2010).  A court may also consider, in its discretion, any other factor reasonably

related to a fair award of fees.  *Id.* at 337-38.[22]

The party seeking an award of fees must prove the amount of attorneys' fees under

the standards ordinarily applicable for proof of contractual damages.  *Bankers & Shippers*

*Ins. Co. of New York v. Electro Enterprises, Inc.*, 287 Md. 641, 661, 415 A.2d 278 (1980).

When the fee request is primarily computed according to the time spent by the attorney, the

billings supporting the award should be "as detailed as reasonably possible, so that the client,

and any other person who might be called upon to pay the bill, will know with some

precision what services have been performed."  *Diamond Point Plaza*, 400 Md. at 760.

The reasonableness of attorneys' fees is generally a factual determination within the

sound discretion of the trial judge and will not be overturned unless clearly erroneous.  *Myers*

*v. Kayhoe*, 391 Md. 188, 207, 892 A.2d 520 (2006); *Atl. Contracting & Material Co. v. Ulico*

*Cas. Co.,* 380 Md. 285, 316, 844 A.2d 460 (2004).  However, there must be sufficient

information in the record to enable a reviewing court to follow the reasoning of the trial

court.  *Monmouth*, 416 Md. at 340 & n.13; *cf. Friolo v. Frankel*, 373 Md. 501, 529, 819 A.2d

354 (2003) (remanding a fee determination because the court could not determine whether

trial court had used the appropriate method to compute fee award).

---

[22] These principles are now incorporated in Maryland Rules 2-701 *et seq.*, which became effective after the trial in this case.  The MLRPC 1.5 factors now appear, in slightly different form, in Rule 2-703(f).

*Sufficiency of Evidence for Fee Award*

As indicated above, the evidence submitted by Patient First to support the award of attorneys' fees relating to the Politis litigation consisted of (1) the redacted billing report from the law firm that defended Patient First and (2) the testimony of Patient First's General Counsel that the total amount of the fees was reasonable, in his experience, for a case that had proceeded through some discovery and mediation prior to a settlement. In closing argument at trial, Patient First's counsel alluded to the MLRPC 1.5 factors without analyzing how they applied in this case and relied primarily on the opinion of the General Counsel.[23] The Circuit Court awarded the full amount requested for the Politis litigation but did not articulate its reasoning in its oral ruling.

It is likely well within the discretion of a trial court to award fees based on detailed billing statements supported by the judgment of an experienced corporate counsel who had judged the bills to be reasonable and necessary to the company's defense when he authorized their payment. But the complete redaction of all description of the services rendered in the billing statements renders the court's determination here an act of faith rather than of discretion. This was not a redaction of a few isolated items that might be sensitive or privileged, but the wholesale elimination of all descriptions of the services rendered by the

---

[23] With apparent reference to MLRPC 1.5(a)(4) – the factor concerning "the amount involved" in the case – Patient First's counsel noted that the Politis complaint sought $15 million in damages. The Circuit Court reasonably discounted that figure, noting that an *ad damnum* is generally a "meaningless fictional number."

33

law firm.[24]  In the absence of any description of the services rendered, all one reviewing the report is left to do is to check the arithmetic.  No explanation was offered at trial for the redaction of this information.  Nor could we find anything in the record that might explain it.

Undoubtedly, a conscientious general counsel would have carefully scrutinized the redacted information about the work performed to assess whether it was reasonable for his company to pay the fees that were billed.  A court charged with making a fee award must make a similar judgment as to fees – whether it is reasonable for an opposing party to be obligated to pay them.  While it is certainly not necessary for the court to fly-speck the bill, without access to the redacted portion of the bill, it would be difficult for the court to give conclusive weight to the opinion of Patient First's General Counsel, which itself was likely based on the missing information.  And it seems only fair that the opposing party would have at least the opportunity to point out to the court anything it deemed questionable.  *Diamond Point*, 400 Md. at 761 ("A party against whom a fee award is sought has a right to know the basis of the claim, so that it can be defended..."); *see also Maxima Corp. v. 6933 Arlington Development Ltd. Partnership*, 100 Md. App. 441, 453-54, 641 A.2d 977 (1994) ("a fee is not justified by a mere compilation of hours multiplied by fixed hourly rates ... a request for fees must specify the services performed..."); *Long v. Burson*, 182 Md. App. 1, 27, 957 A.2d

---

[24] By contrast, the billing statements that were submitted by the firm representing Patient First in this action in the unsuccessful attempt to have those fees reimbursed as part of the indemnification provide significant detail as to the services it performed for Patient First.

173 (2008) (parties seeking attorneys' fees failed to meet their burden of production when they submitted nothing more than the number of hours worked and the hourly billing rate of attorneys).

There is no question that, under paragraph 7.1 of the Agreement, Patient First is entitled to reasonable attorneys' fees as part of the indemnification to be paid by CCBC. Accordingly, while we cannot affirm the attorneys' fee portion of this award, we remand for the Circuit Court for further consideration of the reasonableness of its request. To clarify, we are not holding that it would be an abuse of discretion for the Circuit Court to find that the amount sought here is reasonable, but rather that there is currently insufficient evidence in the record to make that determination.

## IV

## Conclusion

For the reasons explained above, we hold:

1 - The indemnification agreement between CCBC and Patient First did not provide for indemnification of Patient First for liability arising from its own negligence. Accordingly, there was no need to apply the common law presumption to interpret the agreement.

2 - Patient First was entitled to indemnification for liability arising from the negligence of a venipuncture student that would be attributed to Patient First under the doctrine of *respondeat superior*. Patient First would not be entitled to indemnification for liability arising from its own concurrent or superseding negligence.

35

3 - The trial court properly placed the burden of proof on Patient First to establish the existence of the indemnification agreement, the negligence of the venipuncture student, the resulting claim against Patient First, and its payment of money to settle that claim. The trial court properly placed the burden of proof on CCBC to demonstrate that Patient First itself was also negligent.

4 - The trial court was not clearly erroneous when it found that Patient First carried its burden of proof and that CCBC did not carry its burden of proof.

5 - With respect to Patient First's request for reimbursement of attorneys' fees paid in connection with the Politis litigation, in light of the fact that the documentary evidence of the actual services performed was redacted as to what those services were, there was insufficient evidence to support a conclusion that the requested fee award was reasonable.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND VACATED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE SHARED EQUALLY BY THE PARTIES.**